UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KRISTINE E. HENRIKSEN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  07-C-6142 |
| | ) | |
| v. | ) | |
| | ) | **Hon. Jeffrey Cole** |
| MICHAEL J. ASTRUE, | ) | U.S. Magistrate Judge |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

**I.      Introduction**

This memorandum is presented in support of Plaintiff Kristine E. Henriksen's motion for summary judgment reversing the decision of the Defendant.  The Administrative Law Judge's decision denying Plaintiff's application for a period of disability, Disability Insurance Benefits ("DIB") under Sections 216(i) and 223 of the Social Security Act should be reversed or remanded because it contains errors of law and is not supported by substantial evidence. Jurisdiction arises under 42 U.S.C. § 405(g).  All administrative remedies have been exhausted.

**II.      Procedural History**

Plaintiff filed an application for DIB on April 14, 2005, alleging an onset date of January 1, 2003.  (R.55-57). Plaintiff's application was denied initially on June 22, 2005 and upon reconsideration on December 28, 2005.  (R. 35-39, 46-49).  Plaintiff timely filed a Request for Hearing on February 22, 2006.  (R. 45).  On April 12, 2007, Plaintiff appeared and testified at a hearing before Administrative Law Judge ("ALJ") Cynthia Bretthauer of the Office of Disability Adjudication and Review in Evanston, Illinois.  (R. 205).   Appearing and testifying at the

hearing was a Vocational Expert ("VE") William Newman; Plaintiff was represented by Marcie Goldbloom. (R. 205). On April 27, 2007, ALJ Bretthauer denied Plaintiff's application for DIB. (R. 13-23). Plaintiff then timely filed a Request for Review of the hearing decision on May 14, 2007 and filed a memorandum in support on August 10, 2007. (R. 10-12, 200-4). After reviewing the memorandum, the Appeals Council denied review on August 28, 2007, making the ALJ's decision the final decision of the Commissioner. (R. 4-7); 20 C.F.R. § 404.981. Plaintiff filed her timely Complaint for Judicial Review pursuant to 42 §U.S.C. 405(g) on October 30, 2007.

**III.    Statement of the Case**

    A.    <u>Background</u>

Plaintiff was born on January 4, 1954, was 49 years of age at onset and was 53 years old at the time of the hearing. (R. 55). Plaintiff is single with no children, stands 5'5" and weighs approximately 360 pounds. (R. 55, 167). Plaintiff completed a bachelor's degree in communication. (R. 79, 211). Plaintiff's past relevant work includes work as a technical writer, consultant, manager and then director at an information technology consulting firm as well as a manager of a health insurance company and a senior technical writer at a software development information technology firm. (R. 70). Much of Plaintiff's work required technical knowledge and skills, required her to supervise anywhere from 2 to 10 people, required lifting of computers, components and files weighing from 10 to 50 pounds, but required her to spend most of her time, 6 to 7 hours (some of her jobs require her to work 12 hour days), sitting and writing and typing. (R. 70-78). Plaintiff last performed substantial gainful activity ("SGA") in 2000 and has not worked since October of 2001. (R. 63, 70). Plaintiff is insured for the purposes of DIB through at least December 31, 2006. (R. 33-34).

B.     Medical Evidence

In 2001 and 2002, Plaintiff received treatment from Dr. E.H. Outly for hypertension, anxiety due to stress at work, abdominal pain, depression, osteoarthritis of the knees with crepitus, swelling and pain that causes her "a lot of difficulty walking" and seasonal allergies, for which he prescribed Bextra[1], Celexa[2], Toprol, Vioxx[3], Flonase and Avalide.  (R. 105-12). Plaintiff was awarded a disabled person parking placard in 2002 due to her permanent and severe osteoarthritis of the knees; Dr. Outly signed the certification noting that she is "severely limited" in the ability to walk and cannot walk 200 feet without stopping to rest.  (R. 114).  On January 20, 2003, Dr. Outly noted her to have trace edema in her extremities and continued her prescriptions for her various impairments.  (R. 104).  On April 14, 2003, Plaintiff's edema had resolved and she stated that she was doing well on her medications.  (R. 103).  On February 18, 2004, Dr. Outly had a discussion with Plaintiff regarding her morbid obesity and refilled her medications.  (R. 102).  By May 17, 2004, Plaintiff had lost 28 pounds dieting with Weight Watchers, but Dr. Outly noted her to continue to suffer from morbid obesity, hypertension and depression.  (R. 101).  On March 21, 2005, Dr. Outly noted Plaintiff needed refills of her medications, including Lexapro[4], Bextra, Flonase, Allegra, Avalide and Toprol, to continue treatment of her seasonal allergies, hypertension, osteoarthritis and depression, and noted her to have edema.  (R. 100).

---

[1] Bextra was a NSAID used to treat inflammation, fever and pain caused by osteoarthritis and was withdrawn from the market due to its serious side-effects.  Drugs.com, http://www.drugs.com/mtm/bextra.html (last updated 2/22/07).

[2] Celexa is indicated for the treatment of depression and side-effects include nausea, dizziness, insomnia, somnolence and agitation. PHYSICIAN'S DESK REFERENCE, 1176 (28th ed. 2007) (hereinafter "PDR").

[3] Vioxx was used to treat pain, inflammation and stiffness associated with arthritis and it was withdrawn from the market due to its serious cardiovascular side-effects.  Other side-effects include dizziness, fatigue and diarrhea. Drugs.com, http://www.drugs.com/vioxx.html (last updated 2/27/07).

[4] Lexapro is indicated for the treatment of major depression and has side-effects including drowsiness, nausea, sweating, dizziness and fatigue.  PDR at 1190.

On May 12, 2005, Plaintiff underwent a consultative psychiatric evaluation by a DDS-selected doctor, Dr. Kiran Frey, M.D., who spent 40 minutes with Plaintiff and found her to have a major depressive disorder (currently in remission), an euthymic mood, mild stressors, functioning reduced 80% by her depression and a good prognosis. (R. 123-26). On the same date, Plaintiff also underwent an internal medicine consultative examination by a DDS-selected doctor, Dr. Ahmari M. Shakih, M.D., who found her to have bilateral degenerative joint disorder of the knees with pain and difficulty standing for any prolonged period secondary to her obesity, poorly controlled hypertension, retinopathy and depression; he did not address the shoulder pain of which she complained. (R. 127-30). Specifically, Dr. Shakih noted that Plaintiff had trouble getting on and off the table due to her obesity, moves slowly, had normal range of motion in her cervical and lumbar spines, reduced range of motion in her left knee and hips and is able to bear weight for a short time before needing to hold the table for support. (R. 128-29, 132). An X-ray was taken of her left knee, which revealed moderate degenerative joint disease with marked joint space narrowing, oseophyte formation and bone-on-bone areas. (R. 135).

On May 24, 2005, a non-treating non-examining State agency physician, Charles Kenney, completed a physical RFC, based on her degenerative joint disease, hypertension and obesity (he notes a BMI of 62[5]), by checking off boxes to indicate Plaintiff is capable of sedentary work with preclusion from climbing ladders, ropes and scaffolding and limitation to only occasional climbing of ramps and stairs. (R. 115-22). On June 8, 2005, a non-treating non-examining State agency physician, Carl Hermsmeyer, completed a Psychiatric Review Technique Form ("PRTF") finding Plaintiff to have major depression in remission that is non-severe with only mild functional limitations. (R. 136-49).

---

[5] According to SSR 02-1p, adopting the National Institutes of Health medical criteria, a Body Mass Index (BMI) of more than 30.0 is recognized as "obesity" and a BMI of more than 40.0 is recognized as level III "extreme" obesity, representing the greatest risk for developing obesity-related impairments.

On September 19, 2005, Plaintiff saw Dr. Outly noting that she is having trouble sticking to her diet and is having a lot of fatigue, joint aches and pain with continued morbid obesity, osteoarthritis, hypertension and depression.  (R. 152).  On the same date, Dr. Outly completed a Physical RFC form stating that Plaintiff suffers from morbid obesity, hypertension, severe osteoarthritis with severe pain limiting her to walking less than 50 feet, a reduced range of motion in her knees, hips and ankles, tenderness joint deformity, muscle weakness, dyspnea and depression with an overall poor prognosis.  (R. 154).  Dr. Outly then opined that Plaintiff's impairments interfere frequently with her ability to pay attention and concentrate making her incapable of even low stress jobs.  (R. 155).  In terms of physical abilities, Dr. Outly then opined that Plaintiff cannot walk any blocks without pain or discomfort, can sit for thirty minutes at a time, stand for 10 minutes at a time, stand and walk less than two hours total and sit about 2 hours total throughout a work day with 3 minute periods of walking every hour, the ability to change positions at will, take unscheduled breaks and use an assistive device when engaging in occasional standing and walking.  (R. 155-56).  Dr. Outly opined that Plaintiff can rarely lift and carry less than 10 pounds and never lift/carry over 10 pounds in a competitive work environment, never twist, stoop, crouch and climb, and she has limitations in repetitive fingering, handling and reaching, while being prone to good and bad days.  (R. 156-57).  Ultimately, Dr. Outly assessed that Plaintiff will likely miss more than four days of work a month due to her impairments.  (R. 157).  On October 17, 2005, Dr. Outly restricted Plaintiff's salt intake.  (R. 151).  On December 5, 2005, Dr. Outly renewed Plaintiff's parking placard due to continued permanent knee disorders limiting her ability to walk, and he increased her Naproxen for arthritic pain, decreased her depression medications and continued her other prescriptions.  (R. 150, 153).

On December 16, 2005, a non-treating non-examining State agency physician, Ernst Bone, completed a physical RFC form by checking off boxes to indicate Plaintiff is capable of sedentary work with limitations to frequently lifting less than 10 pounds with occasionally lifting only 10 pounds, limitations in using her lower extremities to push/pull and occasional limitations in kneeling, crouching and crawling.  (R. 158-64).

On March 1, 2006, Dr. Outly was treating Plaintiff for a urinary tract infection and sinusitis.  (R. 177).  On May 8, 2006, Plaintiff reported a lot of problems due to her arthritis to Dr. Outly, who refilled her medications and asked her to get some tests.  (R. 176).  Tests revealed cholesterol at 249, triglycerides at 681 and TSH at 6.458.  (R. 187-88).  On May 24, 2006, Plaintiff was treated for bronchitis, hypothyroidism, hyperlipidemia and hypertension.  (R. 175).  On August 3, 2006, Dr. Outly treated her for hypothyroidism, hyperlipidemia, hypertension and continued her regular prescriptions.  (R. 174).

On October 3, 2006, Plaintiff underwent an orthopedic consultative examination by a DDS-selected doctor, Anthony L. Brown, M.D., who diagnosed her with morbid obesity, bilateral shoulder pain, restriction of motion in both knees, a slow and waddling gait, restricted squatting and restriction of motion due to girth of her thighs.  (R. 166-68).  Dr. Brown then completed a Medical Source Statement opining that Plaintiff is limited to lifting less than 10 pounds occasionally, standing and walking less than 2 hours, limited pushing and pulling with her lower extremities, only occasional crouching, crawling, stooping and kneeling and no climbing or balancing.  (R. 169-72).  On December 5, 2006, Dr. Outly prescribed Tramadol.  (R. 173).

On March 20, 2007, Dr. Outly saw Plaintiff for acute bronchitis with bronchospasm, sinusitis, hyperlipidemia, hypertension, depression, osteoarthritis and prescribed her long-term

medications as well as an albuterol inhaler and Z-Pak.  (R. 193).  On March 21, 2007, Dr. Outly wrote a letter stating that Plaintiff's musculoskeletal problems have not improved and that she continues to have the same restrictions as noted in 2005 as he has not seen any improvement and her prognosis is poor.  (R. 192).

      C.    <u>Plaintiff's Testimony</u>

Plaintiff testified that she lives alone and pays her mortgage out of savings.  (R. 210). Plaintiff does some limited driving to her sister's house and the grocery store.  (R. 210-11).  She indicated that she has a bachelor's degree in communications and that the last job she held was for a consulting firm, which closed resulting in the loss of her job.  (R. 211).  Her job required her to travel to various companies and walk around.  *Id*.  Plaintiff's work prior to that was as a technical writer for Windstar, which required weekly travel, sitting for an hour and a half a day, and conducting meetings and interviews as well as supervising other writers, which required her to do a lot of walking.  (R. 212-13).  Her work as a senior technical writer at Pansofic also required interviews and gathering information, which required walking, and the rest of the time she was sitting.  (R. 213-14).  The ALJ asked why she could not go back to this job that involved a lot of sitting, to which she responded that before she can sit and do the typing there is a lot of interviewing and gathering of information, which requires walking, and there is a lot of heavy lifting of large manuals.  (R. 214-15).  She explained that she has trouble changing positions quickly because of her stiffness and she also has trouble concentrating due to her medications, fatigue and pain.  (R. 215, 221).  Plaintiff attempted to look for more work for a year, but "ran out of steam" as the interviews required a lot of walking.  (R. 215).

Plaintiff indicated that she is not a big doctor person, which is why she hasn't gone to see an orthopedist, as she was raised to keep a "stiff upper lip" and she has come to accept her

condition as permanent. (R. 216). She does take her medications compliantly and do strengthening exercises, and she indicated that every doctor she has seen about knee surgery has suggested losing weight first, while the orthopedic consultative doctor did not mention surgery, but only losing weight to her. (R. 216-17). She indicated she has lost over 20 pounds in the prior year and has tried her best to do what she can to reduce her weight. (R. 218).

Plaintiff stated that she first started having a lot of pain in her right knee in 2000 after going up some stairs, at which time she could barely walk and Dr. Outly first took an X-ray. (R. 219). She then was relying on her left knee a lot causing the left knee to worsen. (R. 219-20). She indicated that the consultative examiner told her he would take an X-ray of only one knee, so she told him her left knee was worse. (R. 220). She indicated her pain is most severe in her knees, that she can feel the bones rubbing together at times, that it is so sharp and continuous she cries out on occasion, and she noted that her shoulder pain is constant and makes her have to rest during the day. (R. 220). She indicated that thrice in the past she had to go to the hospital to get a Demerol shot for her pain and that her everyday medication just takes the edge off the pain pain, but does not eliminate it. (R. 221-22). Her medications make her sleepy, interfering with her ability to read and remember what she is talking about. (R. 222). Her right shoulder pain increases with activity while her left shoulder hurts when it moves into a certain spot. *Id*. She has difficulty showering, reaching and lying in bed as a result. *Id*. She also has foot pain, which her doctor told her was a result of her age and arthritis. *Id*.

In terms of her physical abilities, Plaintiff testified that she cannot walk a block, she had to lean on her sister on the way in to the hearing, and her doctor has prescribed a cane. (R. 223). She indicated she can stand unsupported for two minutes, sit a couple of hours at a time before needing to move and she can lift maybe 10 pounds. *Id*. On a typical day, she takes her

medication even before getting out of bed, eats breakfast, takes more pills, spends an hour and a half in the bathroom getting moving and does things in small increments. (R. 223-24). She cannot stand long, requiring breaks when preparing food, only vacuums a few times a year, does only a few dishes, is behind on her laundry, only changes her bed every three weeks and stays in bed a lot of the time. (R. 224). She does very little shopping, as her sister picks up a lot of things for her, and her remaining hobby is making copper bead animals no more than a couple times a week for an hour. (R. 225). She denied gardening in 2005 stating that she just walked around the property every few weeks to look at perennials in the garden she planted ten years ago. (R. 226). She reads a couple hours a day in 15 to 20 minute increments as her hands get numb when she is holding a book; she occasionally plays piano, goes out to eat on occasion, occasionally goes to church and does stretching exercises. (R. 227). Plaintiff related that she sweats profusely on her medication, she fatigues quickly so things take her longer to perform, and she hears a clicking noise in her knee several times a day. She does not cry as much anymore now that she is taking medication for her depression and she tends to get five to six hours of sleep at night. (R. 228-30).

     D.    Vocational Expert's Testimony

William Newman appeared and testified as the VE at the hearing. (R. 230-36). The VE described all of Plaintiff's past work as being skilled, light work except the technical writing job, which was skilled, sedentary work. (R. 230-31). The ALJ's first hypothetical was for an individual of Plaintiff's age, education and work background who is limited to two hours of standing and walking, sitting six hours, frequently carrying less than 10 pounds, occasionally carrying up to 10 pounds, no repetitive movements with feet or legs, only occasional crawling, crouching, kneeling and never climbing ladders, ropes and scaffolds. (R. 231). The VE testified

that such an individual would be able to perform Plaintiff's past relevant work as a technical writer.  *Id*.  Then, based on Anthony Brown's Medical Source Statement ("MSS"), the VE opined that the person could still do work as a technical writer.  (R. 231-32).  The VE stated his testimony does not conflict with the DOT and the SCO.  (R. 232).

Plaintiff's attorney then added to the ALJ's first hypothetical frequent interruptions in the ability to pay attention and concentrate due to pain and other symptoms, which she explained was between 34 to 66% of a workday, to which the VE responded there would be no work as she would be off task one-third of each hour.  (R. 232-34).  The VE then testified that, for skilled work, the individual could be off task 10 to 15 minutes every hour and still sustain employment. (R. 234).  Plaintiff's attorney then asked whether, nevertheless, at the end of the workday, a certain amount of work completed would still be expected, to which the VE responded affirmatively.  *Id*.  The VE added that in technical writing that person could only miss one day of work a month or 12 days a year.  (R. 235).  Counsel then asked what kind of stress the job entails, whether it would be considered a low stress job, to which the VE responded no.  *Id*. Counsel additionally asked whether a person could perform the work with a need to not just take unscheduled breaks, but lie down periodically during the day, to which the VE responded no. (R. 236).  The VE also testified that she could not take rest breaks for an hour or any breaks other than those scheduled.  *Id*.  He finished testifying by stating that it goes without stating that a person who cannot sustain eight hours of work would be precluded from employment.  *Id.*

E.    The ALJ's Decision

On April 27, 2007, the ALJ issued an unfavorable decision denying benefits.  (R. 13-23). In her decision, the ALJ found Plaintiff to have severe bilateral knee pain secondary to degenerative joint disease, morbid obesity, hypertension and a history of depression, but she did

not find Plaintiff's impairments to meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (R. 17-18). Although the ALJ finds Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, Plaintiff's statements regarding the duration, intensity and limiting effects of the symptoms was "not entirely credible." (R. 22). The ALJ then found Plaintiff has an RFC of being able to frequently carry less than 10 pounds, occasionally carry up to 10 pounds, stand/walk for at least two hours, sit for six to eight hours, perform activities that do not involve repetitive movements with her feet or legs, only occasional crawling, crouching, kneeling and stooping and never climbing stairs, ramps, ladders, ropes and scaffolds. (R. 18). The ALJ then found that Plaintiff could return to her past relevant work as a technical writer. (R. 23).

## IV.    Issues for Review

Plaintiff maintains that the ALJ's determination that she is not disabled is improper. In finding Plaintiff is not disabled the ALJ's decision is marred by legal error and is not supported by substantial evidence. Issues discussed herein include: (1) the ALJ's RFC finding is not supported by substantial evidence, (2) the ALJ erroneously discredited Plaintiff; and (3) the ALJ made an erroneous Step Four determination.

## V.    Standard of Review

The Social Security Act authorizes judicial review of the Commissioner's final decision as to whether substantial evidence supports that decision and whether the Commissioner committed legal error. 42 U.S.C. § 405(g) (2003); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where an ALJ denies benefits, he must build an accurate and logical bridge from the evidence to his

conclusion. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). Where there is an error of law, the court must remand regardless of the volume of evidence otherwise supporting the ALJ's decision. *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

**VI.    Argument**

A.    The ALJ's RFC Finding is Not Supported by Substantial Evidence.

The ALJ mischaracterized the consultative evidence of record, improperly weighed the evidence of record and relied on only State agency opinions, which can never be substantial evidence to support an ALJ's decision. SSR 96-6p; *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); *see also Allen v. Weinberger*, 552 F.2d 781 (7th Cir. 1977) *Burnett v. Barnhart*, 2004 U.S. Dist. LEXIS 7990, * 26 (D. Ill., 2004); *Strickland v. Barnhart*, 107 Fed. Appx. 685, 688 (7th Cir. 2004).

The regulations require that the opinions of a treating physician be accorded controlling weight, unless the ALJ provides specific "good reasons" for reducing the weight given and states the weight actually accorded. 20 C.F.R. § 404.1527. Even when the treating doctor's opinions are not entitled to controlling weight, they are still deserving of great weight according to SSR 96-2p. In fact, a treating physician's opinion is entitled to conclusive weight when it is not inconsistent with the evidence of record. SSR 96-2p; *see also, Gudgel*, 345 F.3d at 470 (ALJ can reject treating physician's opinion only for good reasons supported by substantial evidence); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)(holding ALJ must explain his rationale for rejecting treating physician's assessment); *Whitney v. Schweiker*, 695 F.2d 784, 788-89 (7th Cir. 1982)(finding error where the ALJ did not give substantial weight to treating physician's conclusions where there was little evidence contrary).

Here, the ALJ stated that the opinion of Dr. Outly was not supported by any objective tests; thus, his opinion was given very little weight. (R. 22). As the ALJ notes, there is an X-ray of record supporting a finding of degenerative joint disease in both knees. (R. 22). Dismissing those parts of Dr. Outly's opinion that conflicted with her ultimate RFC finding, in particular the non-exertional aspects of that assessment, was made by the ALJ without providing good reasons for so doing simply because Dr. Outly did not provide his x-ray. However, the x-ray evidence in the record certainly demonstrated bilateral degenerative joint disease of her knees and Plaintiff's morbid obesity exacerbates the impact on her knees as well as the pain associated with that disease. As to her walking and standing limitations, the ALJ provides no logical rationale for rejecting Plaintiff's need for changes in positions, ultimate inability to sustain the sitting and standing necessary for even sedentary work, need to take unscheduled breaks to relieve her pain, inability to lift even less than 10 pounds rarely and limitations in repetitive fingering, handling and reaching. (R. 156-57). Moreover, Plaintiff's symptoms and limitations are reasonably related to a chronic condition, which Dr. Outly had been treating her for years; as he was in the best position to view the effect of her impairments over a long period of time, it was unreasonable for the ALJ to simply reject Dr. Outly's findings as to her exertional abilities. Additionally, Dr. Outly would not have signed her disabled placard for the purposes of obtaining closer parking if there was not a significant reason for it, that being that she cannot walk and stand much. Additionally, Plaintiff noted that Dr. Outly did an X-ray; thus, the ALJ should have asked counsel to obtain it or re-contacted the doctor for the basis of his opinion, as his opinion is the only treating opinion of record, rather than reject the opinion outright and rely only on evidence that can never be substantial evidence to support the ALJ's determination. Indeed, if the

ALJ though there was insufficient evidence, it was incumbent upon her to make *every* reasonable effort to re-contact Dr. Outly in her duty to fully develop the record.  20 C.F.R. § 404.1512(e).

The ALJ also rejects Dr. Outly's report that Plaintiff had diminished concentration and attention because of pain (R. 22)[6].  Simply because Dr. Outly had not noted the problems with concentration in his treatment notes does not mean the ALJ is free to reject that limitation.  Dr. Outly reported diminished ability to sustain attention and concentration related to Plaintiff's underlying impairment and that opinion is not inconsistent with the evidence of record.  Thus, even if the ALJ did not accord that limitation conclusive weight, she was still required to give it great weight or else explain by way of a reasonable and logical rationale why she rejected it.  SSR 96-2p.  Here, the ALJ failed to do that.  She certainly did not give an adequate explanation for rejecting the opinion that the combination of Plaintiff's bilateral knee DJD and morbid obesity resulted in such severe pain that (particularly along with the effects of medications) her concentration would be impaired to a degree.  The ALJ does not suggest what treatment Dr. Outly would have been giving Plaintiff for deficits in concentration and fails to consider that treating physicians simply do not necessarily record every symptom.  For example, a neurologist treating a patient with long-standing multiple sclerosis but no new symptoms, may simply write "stable" or "nothing new" on the individual's chart; that does not mean, however, that the individual is not suffering from fatigue and intermittent blurred vision.  *See, e.g., Thorpe v. Cont'l Cas. Co.*, 2002 U.S. Dist. LEXIS 24405, *12-13 (E.D. Pa. 2002) (one needs to consider the entire context of the record.  Individual notations of "improved" or feeling a "bit better" cannot disprove disability). It is no different here.  Dr. Outly has been treating Plaintiff's DJD and morbid obesity for a good while, and the fact that he does not write in his treatment notes

---

[6] We will address the ALJ's rejection of Plaintiff's testimony that she has trouble concentrating due to medications, fatigue and pain in the next section regarding the ALJ's improper credibility finding.

that the pain from her condition interferes with her concentration does not negate that statement's reasonableness nor relation to Plaintiff's underlying medical conditions.   Interestingly, the Seventh Circuit has repeatedly noted that pain can be severe to the point of being disabling even though it has no diagnosable cause; problems in concentration resulting from pain should be similarly treated. *Sims v. Barnhart*, 442 F.3d 536, 537-38 (7th Cir. 2006); *Carradine v. Barnhart*, 360 F.3d 751, 753-54 (7th Cir. 2004).

Indeed, the ALJ cannot disbelieve Dr. Outly's findings or Plaintiff's testimony solely because it seems in excess of the "objective" medical evidence or is not noted in the treatment notes explicitly. *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005).  The ALJ gives no other reasons for rejecting any of the other findings made by Dr. Outly other than the general statement that they are unsupported, which is not adequate to meet her duty to provide good reasons for the rejection of Dr. Outly's opinion.  Had the ALJ properly incorporated Dr. Outly's limitations, she would have been constrained to find Plaintiff unable to perform any SGA.

After dismissing the findings of Dr. Outly, the ALJ then states she relied on the State agency physician opinions of record, which are hardly substantial evidence to support her determination.  First of all, it is important to note that the ALJ erroneously ignored some of the findings made by the consultative examiners herein.  Indeed, the ALJ states that the orthopedic CE found no support for Plaintiff's complaints of shoulder or foot pain; however, Dr. Brown diagnosed her with bilateral shoulder pain, despite absence of restriction in motion; clearly, he found this pain credible, and he limited her to no more than occasional lifting of 10 pounds and never more that 10 pounds.  (R. 18, 166-72).  Furthermore, although the ALJ states she considered this opinion, she did not incorporate all of his findings into her RFC, which is harmful error as it can erode the occupational base.

Next, the ALJ ignored that the psychiatric CE, Dr. Frey, reported that even though Plaintiff's depression was in remission, her functioning is reduced 80% by her depression. (R. 123-26). Additionally bolstering this report is Dr. Outly's consistent prescriptions for depression medications. (R. 100-112, 150-54, 193). Instead, she relied entirely on a June 8, 2005 non-treating non-examining State agency PRTF, which was based on a review of Dr. Frey's report, and found Plaintiff to have major depression in remission that is non-severe with only mild functional limitations. (R. 136-49). Despite this report, the ALJ found Plaintiff's depression to be severe. (R. 17). Oddly, the ALJ rejected the state agency's physician's opinion that Plaintiff's depression was not a severe impairment, but she then adopted the mild functional limitations listed by that same State agency physician, while ignoring outright the specifics detailed in Dr. Frey's report. The misplaced reliance on this secondhand opinion is problematic because the ALJ failed to request Medical Source Statements from the consultative examiner himself, which she should have done per 20 C.F.R. § 404.1519n. This regulation states that the "[SSA] will ordinarily request, as part of the consultative examination process, a medical source statement about what you can still do despite your impairment(s)." The purpose for this is so medical reports will be complete enough to help determine the RFC. 20 C.F.R. § 404.1519n. Although the regulation indicates that the absence of such a statement will not necessarily make the report incomplete, the language calls for them to be done "ordinarily," indicating that they are generally requested and relied upon. *Id.* When an MSS is not ordered from the actual examining doctor, and instead an ALJ relies upon a PRTF from a non-examining doctor in their place, the principle of § 404.1519n has clearly been violated. In addition, it violates the requirement of 20 C.F.R. § 404.1512(e) that the SSA do everything it can to fully develop the

medical evidence.  It is particularly worrisome here, where the ALJ rejected the State agency reviewer's conclusion that Plaintiff's depression was non-severe.

The Commissioner must explain why an MSS was not obtained from Dr. Frey.  The irony is that *Gudgel* and *Allen, supra,* do not allow an ALJ to rely on non-examining opinions in and of themselves to meet the substantial evidence requirement.  However, when a non-examining doctors' RFC is used to interpret an examiner's report, then the charade is that the CE's report is used to give validity to the State agency RFC.  While a State agency RFC is allowed as evidence, it is only cumulative evidence if it is in addition to the CE's separate MSS/RFC, as opposed to being the sole RFC.  Here, the ALJ supplanted the intent of the regulation by relying on the Agency's reviewer's RFC and not obtaining one directly from Dr. Frey.

Ultimately, had the ALJ properly incorporated the limitations found by the treating and examining doctors, a finding that Plaintiff's is disabled would follow.  This is especially true because had the ALJ recognized any difficulty concentrating or any impact on Plaintiff's mental ability to work, she would have had to limit her to low stress, unskilled work.  At the unskilled sedentary work level, Plaintiff is disabled under the Grids; thus, the ALJ ignored the mental limitations and discredited her concentration difficulties giving at the very least the appearance of a result-oriented decision that is impermissible.  20 C.F.R. Part 404, Subpart P, App. 2, § 201.14; *see Jones v. Heckler*, 583 F.Supp. 1250, 1253 (N.D. Ill. 1984) ("what appears to be happening is that benefits are being denied by Secretary not on the merits in individual cases, but on a more restrictive policy that is result-oriented rather than justice-oriented.") Regardless, as a result of the ALJ's erroneous RFC determination, the hypotheticals to the VE are deficient and cannot stand; thus, the Commissioner does not have substantial evidence to support the ALJ's determination.

B.     The ALJ Made an Improper Credibility Determination

Although judicial review of an ALJ's credibility determination is normally deferential, the courts have greater freedom to review the ALJ's decision when the determination rests on "objective factors" rather than "subjective considerations." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (*citing Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). Here, the ALJ found that Plaintiff did have a medically determinable impairment that could reasonably be expected to produce the alleged symptoms; however, Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms "not entirely credible." (R. 22). Specifically, the ALJ then gave the following reasons that Plaintiff was not credible: 1) her treatment is successful in controlling her symptoms; 2) she does "fairly extensive" activities of daily living along with crafts and reading; and 3) she was articulate and had no trouble answering questions at the hearing, purportedly showing no support for diminished concentration or memory. *Id*. However, the ALJ's characterization of Plaintiff's activities is erroneous and she failed to follow the requirements of SSR 96-7p and 20 C.F.R. § 404.1529 in making her credibility determination.

First of all, the ALJ's contention that Plaintiff's ability to answer questions about her own personal history and lack of treatment notes detailing concentration problems belies her allegations of concentration difficulty, also noted in Dr. Outly's uncontradicted opinion, is erroneous. (R. 22). Plaintiff's ability to answer oral questions at a hearing does not undermine her allegations of difficulty concentrating for the purposes of a work environment; indeed, many people can talk about their illness, but may not be able to sustain mental functioning for work. Moreover, the ALJ ignores the source for her concentration problems, which include pain and medications, as well as ignoring her fatigue. (R. 215, 221-22). Finally, the ALJ fails to consider

the toll it took on Plaintiff to maintain herself through the ALJ's questioning, which - - although grueling, was still far short of sustaining her concentration for the majority of a work-day.

As the ALJ found Plaintiff's knee pain to be valid, she cannot simply reject the other effects it has on Plaintiff's condition, such as making it difficult for her to concentrate, particularly where, as here, Plaintiff has pain upon any movement and is morbidly obese with a BMI of 62. (R. 220-22). As the Seventh Circuit instructs, "once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). Moreover, in determining disability, the ALJ must consider all of the symptoms, including pain, fatigue and concentration problems as well as the side-effects of medications, which she clearly did not do herein, and the extent to which the symptoms can reasonably be expected to result from a demonstrated physical impairment. SSR 96-7p and 20 C.F.R. § 404.1529. Additionally, although the ALJ states she considered Plaintiff's obesity and ruling SSR 02-1p in combination with her other impairments when determining RFC, the ALJ failed to properly consider the obesity ruling in finding that Plaintiff's pain (exacerbated by morbid obesity) would rise to the level of interfering with her ability to sustain concentration for a skilled job.

Next, the ALJ insinuates that Plaintiff's daily activities including making crafts and reading undermines her concentration problems and other allegations of disabling symptoms; however, looking at what Plaintiff actually testified to shows that the ALJ's assessment of those activities is somewhat embellished. (R. 22). Plaintiff testifies that she has trouble concentrating due to her medications, fatigue and pain. (R. 215, 221). Her medications make her sleepy, interfering with her ability to read and remember what she is talking about. (R. 222). On a

typical day, she takes her medication even before getting out of bed, eats breakfast, takes more

pills, spends an hour and a half in the bathroom getting moving and does things in small

increments and then spends a lot more time in bed and taking pills to try and relieve her pain.

(R. 223-24).  While in bed, she has made copper bead animals as a hobby, but only makes them a

couple times a week for an hour, which does not support a finding that she can concentrate for a

full day on a regular and continuing basis as required by SSR 96-8p.  (R. 225).  She tries to read

a couple hours a day, again in small 15 to 20 minute increments as her hands get numb when she

holds the book.  She occasionally plays piano, goes out to eat, goes to church occasionally and

does stretching exercises, but none of these activities belies an inability to sustain skilled

stressful work for 8 hours a day, 5 days a week.  (R. 227).  Everything takes her much longer and

none of her activities support the ALJ's credibility determination.  The ALJ ignores the fact that

the ability to do intermittent activities or chores does not demand the same level of exertion as

working full-time.  *See* 20 C.F.R. § 404.1573(c); *Carradine,* 360 F.3d at 751 (finding error

where the ALJ failed to consider the difference between an ability to participate in sporadic

physical activities and the ability to work in a regular work week).  The ALJ has failed to heed

the Seventh Circuit's frequent admonition that the ability to do intermittent activities does not

equal the ability to function in a competitive work environment. *See Mendez v. Barnhart*, 439

F.3d 360, 362 (7th Cir. 2006) (stating "The pressures, the nature of the work, flexibility in the

use of time, and other aspects of the working environment . . . often differ dramatically between

home and office or factory or other place of paid work.)

     Not only does the ALJ inappropriately find that Plaintiff's extremely limited activities

make her not fully credible, but also the ALJ impermissibly ignores the medication side-effects

on her ability to work, such as the extreme fatigue and drowsiness they cause.  Taking strong

pain medication itself is supportive of pain symptoms.  *See* 20 C.F.R. § 404.1529(c)(3)(iv); SSR 96-7p.  Indeed, the ALJ ignores the fact that Plaintiff's medications cause drowsiness and fatigue which interferes with the ability to not only concentrate, but also sustain work on a regular and continuing basis.  The ALJ failed to follow the requirements of SSR 96-7p which requires the her to consider the type, dosage, effectiveness and side-effects of any medication the individual takes to alleviate pain or other symptoms.  Overall, the ALJ improperly rejected Plaintiff's credibility finding, committing substantial error requiring reversal and remand.

C.     The ALJ Incorrectly Found That Plaintiff Can Perform Her Past Relevant Work Due to an Incomplete RFC

The ALJ erred when she found that Plaintiff could perform her past work as a technical writer.  (R. 23).  As discussed in the preceding sections, the ALJ failed to consider many of Plaintiff's impairments, both those that she found not credible and those that she failed to consider at all.  This resulted in an incomplete RFC and led the ALJ to the erroneous conclusion that Plaintiff could return to past work that she cannot due, particularly due to her degenerative knee pain with resulting deficits in concentration and medication side effects.  The ALJ did not make an alternative Step Five finding; thus, since her Step Four finding is erroneous, the ALJ's decision must be reversed.

When determining whether a claimant can perform past relevant work (PRW), the claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and non-exertional demands of such work. SSR 82-62.  A determination of the claimant's ability to do past relevant work requires a careful appraisal of: 1) the individual's statements as to which past work requirements can no longer be met and the reasons for his or her inability to meet those requirements; 2) medical evidence establishing how the impairment limits ability to meet

the physical and mental requirements of the work; and 3) in some cases, supplementary or corroborative information from other sources, such as the Dictionary of Occupational Titles, on the requirements of the work as generally performed in the economy. SSR 82-62. An ALJ must determine the physical demands of the particular type of work that a claimant has performed, and then compare those demands to her present capacities. *Strittmatter v Schweiker*, 729 F.2d 507, 509 (7th Cir, 1984); *see also Orlando v. Heckler,* 776 F.2d 209, 215 (7th Cir. 1985); *Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986). As SSR 82-62 notes, the regulations require careful consideration of the interaction of the limiting effects of the claimant's impairment(s) and the physical and mental demands of her PRW to determine whether she can still do that work.

Furthermore, SSR 82-61 explains two acceptable tests for determining whether one can perform PRW. One acceptable test is whether one has the ability to perform the particular functional demands and job duties peculiar to an individual job as he or she actually performed it. SSR 82-61. The other test is whether one has the ability to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy. SSR 82-61. The ALJ herein found Plaintiff capable of performing her past work, both as she performed it or in the general economy; however, Plaintiff cannot perform the work either way.

First of all, Plaintiff cannot perform her past work as she performed it. Plaintiff's work as a technical writer for Windstar required her to travel weekly, sit an hour and a half a day, and conduct meetings, interviews and supervise writers, which required her to walk a lot. (R. 212-13). As provided by Plaintiff's testimony, this was not sedentary work and is precluded by the ALJ's own RFC. In order to determine whether Plaintiff is physically capable of returning to her former work, the ALJ must ascertain the demands of that work in relation to Plaintiff's present physical capacities, which was not properly done herein. *Strittmatter,* 729 F.2d at 509*; see also*

*Smith v. Barnhart,* 388 F.3d 251 (7th Cir 2004). Had the ALJ properly ascertained the demands of Plaintiff's former work and compared them to her present physical capacities, she could not be found capable of performing this work as she performed it.

Next, although the DOT does show that the technical writer position is sedentary and skilled, Plaintiff cannot perform this work as the ALJ failed to properly incorporate all of Plaintiff's limitations as discussed above. Indeed, as the position is skilled, consideration of Plaintiff's mental impairments are critical. As SSR 85-15 notes, losses of intellectual and emotional capacities are generally more serious when the job is complex. As discussed above, the ALJ failed to properly consider Plaintiff's problems with focus and concentration, her 80% reduction in ability to function, difficulty working at a consistent pace and under stress and fatigue. These impairments are supported by the objective and medical evidence, and they are restricting to the point that Plaintiff cannot perform skilled work; at the unskilled level, Plaintiff is disabled under the Grids, as noted above. Moreover, when the VE considered the effect of these mental impairments, he testified that Plaintiff's past work would be eliminated. (R. 232-36). Additionally, Plaintiff needs breaks during the day to lie down, which the ALJ also inappropriately rejected along with Dr. Outly's opinion, and the VE indicated that such a need would eliminate work. (R. 236). Moreover, the VE testified that Plaintiff's past work was stressful, something else the ALJ failed to factor into her conclusion.

An outright reversal is merited here because a remand would serve no purpose as the evidence shows a clear finding of disability under the Grids when the ALJ's errors are corrected. *See Parsons v. Heckler*, 739 F.2d 1334, 1341 (8th Cir.1984) (Social Security plaintiff found disabled on the basis of the record and awarded benefits); *Bell v. Bowen*, 658 F. Supp. 533, 538 (N.D. Ill. 1987) ("an award of benefits is appropriate when substantial evidence on the record as a whole indicates that the claimant is disabled, and the weight of the evidence indicates that a

remand would only delay the receipt of benefits while serving no useful purpose"); and *Mussman v. Apfel*, 17 F.Supp.2d 885 (S.D. Iowa 1998) (a remand would be useless when the evidence of record warrants a reversal and award of benefits).

## VI.   Conclusion

WHEREFORE, Plaintiff moves this Honorable Court to grant her motion for summary judgment and reverse the Defendant's denial of Plaintiff's application for benefits for the foregoing reasons.   In the alternative, Plaintiff moves this Honorable Court to reverse the determination of the Commissioner and remand this case pursuant to sentence 4 of 42 U.S.C. §405(g) for further proceedings with the law of this court and the rulings and regulations of the Commission.

Dated:  March 21, 2008                                    Respectfully submitted,

                                                          s/ Marcie E. Goldbloom
                                                          Marcie E. Goldbloom
DALEY, DeBOFSKY & BRYANT                                   Attorney for Plaintiff
55 West Monroe Street, Suite 2440                         Kristine E. Henriksen
Chicago, Illinois 60603                                   mgoldbloom@ddbchicago.com
(312) 372-5200
Fax (312) 372-2778

<u>CERTIFICATE OF SERVICE</u>

TO:    Kathryn Kelly                  Karen Sayon
         Assistant United States Attorney     Assistant Regional Counsel
         219 S. Dearborn St., 5th Floor       200 W. Adams St., 30th Floor
         Chicago, IL 60604                Chicago, IL 60606

      The undersigned attorney hereby certifies that on March 21, 2008, she electronically filed the foregoing PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR REMAND with the Clerk of the Court using the CMF/ECF filing system, which sent notice of such filing to Kathryn Kelly, the above named attorney, and that I hereby certify that I have mailed via the United States Postal Service the document to the following non-CMF/ECF participants: Karen Sayon, Esq.

                                <u>s/ Marcie E. Goldbloom</u>
                                 Marcie E. Goldbloom
DALEY, DeBOFSKY & BRYANT         Attorney for Plaintiff
55 West Monroe Street, Suite 2440        Kristine E. Henriksen
Chicago, Illinois 60603              mgoldbloom@ddbchicago.com
(312) 372-5200
Fax (312) 372-2778