UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KRISTINE HENRIKSEN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 07 C 6142 |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Cole |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF**
**COMMISSIONER'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**Introduction**

Plaintiff, Kristine Henriksen, stopped working in 2001 when she was laid off from her job. She now alleges disability due to a variety of impairments, including obesity, knee pain, and depression. After reviewing the evidence, the Administrative Law Judge (ALJ) reasonably restricted Plaintiff to a range of sedentary work and concluded that she could perform her past work as a technical writer. In so finding, the ALJ specifically noted the lack of evidence documenting a deterioration in Plaintiff's condition since the time that she had worked. The ALJ's finding was further supported by an abundance of evidence, including the objective medical evidence (which documented few abnormal examination findings), Plaintiff's conservative and generally successful treatment history, the opinions of reviewing and consultative examiners, and Plaintiff's extensive daily activities (which included gardening, making crafts, and driving her mother to lunch and on errands). The ALJ's decision is supported by substantial evidence and thus should be affirmed.

## Statement of the Case

Plaintiff filed an application for Disability Insurance Benefits (DIB) on April 15, 2005, alleging disability as of January 1, 2003 (Tr. 55-57). Plaintiff's insured status, for purposes of eligibility for DIB, expired on December 31, 2006 (Tr. 15, 33), and to receive DIB, Plaintiff had to establish that she was disabled on or before that date. *See* 42 U.S.C. §§ 416(i)(3) and 423(a)(1). The Agency denied Plaintiff's claim initially and upon reconsideration (Tr. 35-39, 46-49). Following a hearing, an ALJ issued a decision on April 27, 2007, finding Plaintiff not disabled because she could perform her past relevant work (Tr. 15-23). The Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner (Tr. 4-7). Plaintiff seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

## Statement of the Facts

### I.    Plaintiff's Testimony

At the April 2007 administrative hearing, Plaintiff testified that she stopped working in 2001 when she was laid off from her job (Tr. 211, 215). She looked for jobs thereafter, but eventually stopped looking due to pain and an inability to walk (Tr. 215). Plaintiff complained of severe pain in her knees, as well as almost constant pain in her shoulders (Tr. 220). She stated that she took medications which took the edge off of her pain, but did not relieve it; she testified that her medications caused drowsiness and poor concentration (Tr. 221-22). Plaintiff estimated that she could sit for up to two hours if she could move around, and lift about ten pounds, but she could not walk one block and she used a cane to ambulate in her house (Tr. 223).

2

## II.     Medical Evidence

### A.     Medical Evidence From Treating Doctors

Plaintiff periodically sought conservative treatment from Elsa Hernandez-Outly, M.D., a primary care physician, from March 2001 through March 2007, for a variety of impairments, including hypertension, seasonal allergies, osteoarthritis, morbid obesity, hypothyroidism, hyperlipidemia, sinusitis, bronchitis, and depression (Tr. 100-14, 150-57, 173-99, 216). Plaintiff's weight during this period ranged from 327 to 370 pounds (Tr. 102, 112). During the period from January 1, 2003 (Plaintiff's alleged onset date) through December 31, 2006 (the expiration of her insured status), Plaintiff saw Dr. Hernandez-Outly twice in 2003 (Tr. 103-04), twice in 2004 (Tr. 101-02), four times in 2005 (Tr. 100, 150-52), and four times in 2006 (Tr. 174-77). As the ALJ noted in her decision, physical examination findings were essentially unremarkable, with the exception of crepitation with some swelling of Plaintiff's knees in December 2002 (Tr. 105), trace edema of the extremities in January 2003 and March 2005 (Tr. 100, 104), and severe crepitation of her knees in December 2005 (Tr. 150). Plaintiff was seen primarily for prescription refills or routine follow-ups (Tr. 100-05, 108, 151-52, 174-81, 193); she reported that she was doing well in March 2005 and again in October 2005 (Tr. 100, 151).

In September 2005, Dr. Hernandez-Outly completed an "Arthritis Residual Functional Capacity Questionnaire" (Tr. 154-57). She indicated that Plaintiff's symptoms included severe pain in her knees and lower extremities when she attempted to walk more than fifty feet, as well as fatigue and shortness of breath (Tr. 154). Dr. Hernandez-Outly listed Plaintiff's objective signs and clinical findings as reduced range of motion of her knees, ankles, and hips, joint deformity, tenderness, muscle weakness, and dyspnea (Tr. 154). Dr. Hernandez-Outly concluded that Plaintiff was unable

to perform even sedentary work on a full-time basis (Tr. 154-57).  In March 2007, Dr. Hernandez-Outly wrote a "to whom it may concern letter," stating that Plaintiff's musculoskeletal problems had not improved, and that the restrictions from 2005 continued to apply (Tr. 192).

### B. Medical Evidence From Consultative Examiners and State Agency Reviewing Doctors

At the request of the state agency, Kiran Frey, M.D., performed a consultative psychiatric evaluation in May 2005 (Tr. 123-26).  Plaintiff reported that she had been depressed for about the past thirty years; she indicated that she had been prescribed medication and that her depression was stabilized and under control (Tr. 123).  Plaintiff stated that she "keeps very busy;" her activities included working in her garden in the afternoons, making crafts in the evenings, attending Weight Watchers programs, driving her mother to lunch and her errands, and remaining very involved with her sister and her sixteen-year-old niece (Tr. 124).  Dr. Frey described Plaintiff as pleasant, cooperative, warm, engaging, intelligent, and articulate; he documented Plaintiff's euthymic mood, good range of emotional display, normal speech, normal psychomotor activity, normal thought processes, normal memory, and "fine" fund of information, calculation abilities, and judgment (Tr. 123-25).  Dr. Frey diagnosed "Major depressive disorder in remission at this point" (Tr. 125).

Also at the request of the state agency, Ahmari Shaikh, M.D., performed an internal medicine consultative examination in May 2005 (Tr. 127-35).  Plaintiff complained of bilateral knee pain, shoulder pain, obesity, high blood pressure, and depression (Tr. 127-28).  Dr. Shaikh noted that Plaintiff was five feet five inches tall and weighed 370 pounds; she had difficulty getting on and off the examination table and moved deliberately and slowly when stepping up or down (Tr. 128-29). Dr. Shaikh reported that Plaintiff had normal range of motion in all of her joints, except for her knees

and hips; he noted no swelling or tenderness of any joint, and normal strength, sensation, and reflexes (Tr. 129-30).  Dr. Shaikh commented that Plaintiff did not use an assistive device to walk, and he concluded that she would be able to walk 50 yards, though it would be difficult for her to stand for prolonged periods of time due to her obesity (Tr. 129-30).  Dr. Shaikh ordered x-rays of Plaintiff's left knee, which showed moderate degenerative joint disease (Tr. 135).

Charles Kenney, M.D., reviewed the record at the request of the state agency in May 2005, and concluded that Plaintiff could perform work that involved lifting and/or carrying up to twenty pounds occasionally and ten pounds frequently, standing and/or walking at least two hours in an eight-hour workday, sitting about six hours in an eight-hour workday, no climbing ladders, ropes, or scaffolds, and occasional climbing of ramps and stairs (Tr. 115-22).

Also at the request of the state agency, a doctor reviewed the record evidence in June 2005 and concluded that Plaintiff did not have a severe mental impairment (Tr. 136-49).

Ernst Bone, M.D., reviewed the record evidence in December 2005 at the request of the state agency and concluded that Plaintiff could perform sedentary work that involved only occasional kneeling, crouching, and crawling (Tr. 158-65).

Anthony Brown, M.D., performed a consultative orthopedic evaluation in October 2006 (Tr. 166-72).  Plaintiff complained of pain in her knees and shoulders (Tr. 166).  Dr. Brown commented that Plaintiff arose from a chair in a labored manner and walked with a slow gait of a waddling nature (Tr. 167).  Dr. Brown noted reduced range of motion of Plaintiff's knees, no effusion, and full range of motion of her shoulders (Tr. 167).  Dr. Brown determined that Plaintiff could perform work that involved: lifting/carrying less than ten pounds; standing and/or walking less than two hours in an eight-hour workday; unlimited sitting; occasional kneeling, crouching, crawling, and stooping;

5

and no climbing or balancing (Tr. 169-72).

### III.    Vocational Evidence and Administrative Law Judge's Decision

A vocational expert (VE) testified at the administrative hearing (Tr. 230-36).  The VE stated that Plaintiff's past work was as a director, a senior manager, and a manager (all skilled and light positions), and a technical writer (skilled and sedentary) (Tr. 230-31).  The ALJ asked the VE to consider a hypothetical individual who was limited to work involving: sitting for six to eight hours per workday; standing and walking at least two hours out of an eight-hour workday; lifting and carrying up to ten pounds occasionally and less than ten pounds frequently; no repetitive movements with her feet or legs; only occasional crawling, crouching, and kneeling; and no climbing ladders, ropes, or scaffolds (Tr. 231).  The VE testified that such an individual could perform Plaintiff's past work as a technical writer (Tr. 231).

The ALJ considered the VE's testimony and found that Plaintiff could perform her past relevant work as a technical writer (Tr. 23).  Thus, she concluded that Plaintiff was not disabled at the fourth step of the sequential evaluation[1] set forth at 20 C.F.R. § 404.1520 (Tr. 23).  The final denial of benefits is now pending before this Court on substantial evidence review.

**Argument**

### I.    Standard of Review

Section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), authorizes judicial review of the Commissioner's final decision.  When, as here, the Appeals Council denies review,

---

[1]  The ALJ first determined that Plaintiff had not engaged in substantial gainful activity (step one).  The ALJ also found that Plaintiff had severe impairments that did not meet or equal a listed impairment (steps two and three).  The ALJ then found that, given her residual functional capacity, Plaintiff could perform her past relevant work as a technical writer, and thus was not disabled (step four) (Tr. 15-23).  *See* 20 C.F.R. § 404.1520.

the ALJ's decision stands as the final decision of the Commissioner.  20 C.F.R. § 404.981.  The Act

specifies that "the findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence is more than

a "mere scintilla" of evidence but can be less than a preponderance; it is defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229

(1938)).  Judicial review is limited to determining whether substantial evidence supports the ALJ's

findings and whether the ALJ applied the correct legal standards in reaching his decision.  42 U.S.C.

§ 405(g).

## II.    Substantial Evidence Supports the ALJ's Step Four Finding

After reviewing the record evidence, the ALJ reasonably concluded that, despite her

impairments, Plaintiff retained the residual functional capacity (RFC) to perform work that involved:

lifting/carrying ten pounds occasionally and lesser weights more frequently; standing/walking for

at least two hours in an eight-hour workday; sitting for six hours in an eight-hour workday; no

repetitive movements with the legs; only occasional crawling, crouching, kneeling, and stooping;

and no climbing (Tr. 18).  Substantial evidence supports the ALJ's conclusion that Plaintiff was not

disabled because she could perform her past relevant work consistent with these restrictions, during

the critical period on or before December 31, 2006.

In reaching her RFC finding, the ALJ properly considered a variety of factors, including

Plaintiff's conservative treatment history, the minimal abnormal examination findings documented

by her doctor, and the opinions of state agency reviewing doctors and consultative examiners (Tr.

20-23).  Despite this substantial evidence, Plaintiff contends that the ALJ's decision was wrought

with errors. Plaintiff's arguments, however, are without merit. Plaintiff first baldly asserts that the ALJ erred because she relied solely on the opinions of state agency doctors, "which can never be substantial evidence to support an ALJ's decision." Plaintiff's Brief (Pl.'s Br.) at 12. Such is a misstatement of the law, as the opinion of a state agency doctor can in fact constitute substantial evidence to support an ALJ's RFC finding. *See, e.g.,* Social Security Ruling (SSR) 96-5p[2] ("administrative law judges and the Appeals Council, must consider these [State Agency medical and psychological] opinions as expert opinion evidence of nonexamining physicians and psychologists."); *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("Rice complains that the ALJ impermissibly relied upon the opinions of Drs. Bilinsky and Graham, the Social Security Administration state agency doctors who determined Rice's RFC . . . The ALJ was entitled to rely upon their opinions."); *Schmidt v. Barnhart*, 395 F.3d 737, 745 (7th Cir. 2005) ("The ALJ was also justified in relying upon the report of Dr. Warrior, the state agency medical consultant . . . ."). Moreover, as we have explained, the ALJ did not rely "solely" on the opinions of state agency reviewing doctors. Rather, he also relied on Plaintiff's conservative treatment history, her activities, and the minimal abnormal examination findings. In addition, the ALJ's RFC finding was substantially consistent with the opinion of Dr. Brown, who performed a consultative orthopedic evaluation (Tr. 169-72).[3]

Next, Plaintiff contends that the ALJ erred because she did not credit the opinion of Dr.

---

[2] Social Security Rulings (SSRs) referenced in this brief can be accessed from the Social Security Administration's website, at http://www.socialsecurity.gov/regulations/index.htm.

[3] The VE testified that Plaintiff, subject to the limitations articulated by Dr. Brown, could still perform her past relevant work as a technical writer (Tr. 231-32, referencing Exhibit 8F, which is now contained at Tr. 169-72).

Hernandez-Outly, her treating doctor. Pl.'s Br. at 12-15. Plaintiff's argument, however, is without merit, because it was the ALJ's duty to weigh Dr. Hernandez-Outly's opinion, and here, the ALJ thoroughly explained why she did not credit that opinion (Tr. 20-23). For example, the ALJ noted that Dr. Hernandez-Outly's opinion was not well-supported by the objective medical evidence (Tr. 22). *See* 20 C.F.R. § 404.1527(d)(2) (treating source opinion must be well-supported by clinical and laboratory diagnostic techniques); 20 C.F.R. § 404.1527(d)(3) (ALJ considers supportability when weighing medical opinions). The ALJ observed that Dr. Hernandez-Outly documented minimal abnormal findings in her treatment notes, and primarily saw Plaintiff for routine follow-up examinations and prescription refills (Tr. 20-22). She did not refer Plaintiff to any specialists, or order x-rays or MRI scans (Tr. 22). In addition, the ALJ noted that Dr. Hernandez-Outly did not document that Plaintiff's conditions had worsened since the time when she had worked with those same conditions (Tr. 22). *See Schmidt v. Barnhart*, 395 F.3d 737, 745 (7th Cir. 2005) ("Finally, the ALJ reasonably relied upon the fact that Schmidt had, during the relevant time period, been employed for four continuous months doing data entry and had lost his job not due to an inability to perform, but rather due to a decreased workload resulting in layoffs."). The ALJ further observed that Plaintiff only received conservative treatment, and the treatment generally proved successful (Tr. 22). As such, given this lack of support, the ALJ reasonably did not credit Dr. Hernandez-Outly's opinion.

Plaintiff claims that the ALJ was required to recontact Dr. Hernandez-Outly because Plaintiff testified that Dr. Hernandez-Outly did in fact order an x-ray in 2000, but this x-ray was not part of the record. Pl.'s Br. at 13-14, referencing Tr. 219. Plaintiff again misstates the law. An ALJ need only recontact a medical source when the evidence received is inadequate to determine whether the

claimant is disabled.  20 C.F.R. § 404.1512(e); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir.

2004) (holding that the evidence was adequate to find the claimant not disabled and the ALJ was not

required to recontact the medical source or consult a medical expert).  Here, the evidence of record

consisted of comprehensive treatment notes from Dr. Hernandez-Outly, as well as numerous

opinions from reviewing doctors.  The evidence of record was adequate for the ALJ to find Plaintiff

not disabled and, therefore, there was no obligation to recontact Dr. Hernandez-Outly.  Moreover,

Plaintiff has not explained why she could not have submitted the 2000 x-ray herself.  *See Glenn v.

Secretary of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987) (A claimant who is

represented by counsel is assumed to have presented her "strongest case for benefits.").  And, she

has not explained why this x-ray from 2000 — a time when she was working full-time, and several

years before her alleged onset date — was even critical to her case.  As the ALJ noted, Dr.

Hernandez-Outly did not document a worsening of Plaintiff's impairments after she stopped

working, or order any additional tests or studies.  As such, this 2000 x-ray was simply not probative

of her condition during the critical period.

        Next, Plaintiff criticizes the ALJ for rejecting Dr. Hernandez-Outly's opinion that Plaintiff

would frequently experience pain severe enough to interfere with her ability to maintain attention

and concentration necessary to perform even simple work tasks.  Pl.'s Br. at 14-15, citing Tr. 155.

However, the ALJ offered numerous compelling reasons why he did not credit this limitation (Tr.

22).  For example, the ALJ observed that Dr. Hernandez-Outly never mentioned problems with

attention or concentration anywhere in her treatment notes (Tr. 22).  The ALJ also noted that

Plaintiff's activities proved inconsistent with her alleged poor concentration and attention, as she

made craft projects, drove her mother around town to perform errands, watched craft shows on

television, and read (Tr. 22, 124). The ALJ further commented that Plaintiff was articulate and displayed no concentration or memory problems at the hearing (Tr. 22). Indeed, the ALJ found this limitation "[c]learly unsupported" as the record did not document signs of diminished memory or concentration (Tr. 22). To the contrary, consultative examiner Dr. Frey specifically noted that Plaintiff was alert, oriented, articulate, and intelligent, and displayed normal memory and "fine" abilities in the areas of fund of information, calculation, and abstract thinking (Tr. 22, citing Tr. 124-25). Given this evidence, the ALJ reasonably found that Dr. Hernandez-Outly's limitation was "[c]learly unsupported."

Plaintiff further challenges the ALJ's assessment of her mental impairments. Pl.'s Br. at 16-17. She claims that the ALJ ignored the opinion by Dr. Frey that her functioning was reduced eighty percent because of her depression, and that the ALJ erred when she did not request a medical source statement from Dr. Frey. Pl.'s Br. at 16-17. Plaintiff's arguments are unavailing. In the diagnosis section of his report under Axis V, Dr. Frey wrote that Plaintiff's functioning was reduced eighty percent because of her depression (Tr. 125). Such a statement was clearly a typographical error, as it proved grossly inconsistent with everything else in Dr. Frey's report. In particular, Dr. Frey documented Plaintiff's extensive daily activities, reported entirely normal examination findings, and ultimately concluded that Plaintiff's depression was in remission (Tr. 124-25). Indeed, it is disingenuous for Plaintiff to argue that her functioning was reduced eighty percent because of her depression, when she herself told Dr. Frey that her depression was stabilized and under control with medication, that her depression was "in the past," and that she "keeps very busy" with her extensive array of daily activities (Tr. 123-24). Moreover, while the Agency will normally request a medical source statement from a consultative examiner, Plaintiff does not identify any authority in support

11

of her position that the Agency is required to obtain such a statement or that the Agency "*must explain why*" such a statement was not obtained. Pl.'s Br. at 16-17 (emphasis added). Such a statement was particularly unnecessary here, when a state agency reviewing doctor found that Plaintiff did not even have a severe mental impairment, when a consultative examiner concluded that Plaintiff's depression was in remission, and when Plaintiff herself acknowledged that her depression was in the past and under control with medication.

Plaintiff next challenges the ALJ's credibility finding. An ALJ's credibility determination is entitled to "special deference" and the determination will be reversed only if it is "patently wrong." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) (citation omitted). And, in analyzing an ALJ's decision, a court must "give the opinion a commonsensical reading rather than nitpicking at it." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (citation omitted). The ALJ's credibility finding satisfies these standards. In reaching her credibility finding, the ALJ properly considered a variety of factors, including: Plaintiff's extensive activities; her treatment history which was conservative and generally successful; the objective medical evidence which documented few abnormal examination findings; and the lack of any evidence which showed that her condition had deteriorated (Tr. 19-23). *See* 20 C.F.R. § 404.1529(c) (ALJ considers activities of daily living, treatment, and objective medical evidence when evaluating credibility of subjective complaints).

Despite this substantial evidence, Plaintiff contends that the ALJ's analysis was flawed. First, she criticizes the ALJ for rejecting her allegations of concentration problems because she was able to answer questions at the administrative hearing. Pl.'s Br. at 18-19. The ALJ, however, did not reject Plaintiff's allegations solely based on this factor; rather, as we have explained, the ALJ noted the lack of complaints by Plaintiff to her doctor, the lack of abnormal findings reported by Dr.

Hernandez-Outly, the normal memory abilities documented by Dr. Frey, and Plaintiff's extensive activities (Tr. 22). The ALJ's conclusion was reasonable and well-supported by the record evidence. *See Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (claim of concentration problems inconsistent with daily activities, such as reading and playing cards, which suggested a long attention span). Next, Plaintiff claims that the ALJ's analysis of her daily activities was flawed, because she testified that she could only perform minimal activities on an intermittent basis. Pl.'s Br. at 19-20. The ALJ, however, was not required to credit Plaintiff's allegations of limitations. *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003) ("an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability") (citations omitted). And here, the ALJ reasonably observed that Plaintiff's testimony differed greatly from her statement to Dr. Frey (Tr. 19-20, 22). She told Dr. Frey that she "keeps very busy" and she described extensive activities, including making crafts, working in her garden, driving her mother to errands, and attending Weight Watchers programs (Tr. 124). Finally, Plaintiff argues that the ALJ erred because she did not consider the fact that Plaintiff's medications cause side-effects of drowsiness and fatigue. Pl.'s Br. at 20-21. Yet, the ALJ reasonably did not credit Plaintiff's testimony given the record evidence. The record does not show that Plaintiff ever complained to Dr. Hernandez-Outly that her medications caused side-effects of drowsiness and fatigue.[4] *See Schmidt*, 395 F.3d at 746 ("Schmidt never even subjectively reported fatigue as a symptom to any of the physicians whose reports were made part of the record."). Indeed,

---

[4] Plaintiff only complained to Dr. Hernandez-Outly of medication side-effects on one occasion (Tr. 150). In December 2005, she stated that Lexapro caused her to sweat excessively; Dr. Hernandez-Outly decreased Plaintiff's dosage of this medication, and she did not again complain of that side-effect (Tr. 150).

13

Dr. Hernandez-Outly wrote that Plaintiff's medications did not cause any side-effects (Tr. 155). As such, Plaintiff's argument is without merit, and this Court should affirm the ALJ's credibility finding.

Having found that Plaintiff retained the RFC to perform a range of sedentary work, the ALJ concluded that Plaintiff could perform her past relevant work as a technical writer (Tr. 23). The ALJ's finding was supported by the testimony of a VE (Tr. 230-31). Plaintiff challenges the ALJ's step four finding, claiming that she could not perform the job of technical writer as she performed it, and that the ALJ failed to properly include all of her limitations in her RFC finding. Pl.'s Br. at 21-23. However, in order to prove that she was disabled, Plaintiff had to prove that she was unable to perform her past work both as she actually performed it *and* as it was generally performed in the national economy. *See* 20 C.F.R. § 404.1520(e); SSR 82-61. Assuming *arguendo* that Plaintiff could not perform her past work as a technical writer as she had performed it, the VE still testified that Plaintiff, subject to the limitations identified in the ALJ's RFC finding, could perform her past work as a technical writer as that job was generally performed in the national economy (Tr. 230-31). And, while Plaintiff claims that the RFC finding was incomplete, an ALJ is required to incorporate into her RFC finding only those limitations that she accepts as credible. *See Ehrhart v. Secretary of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) (hypothetical question proper because it reflected the claimant's impairments to the extent that the ALJ found them supported by the evidence in the record). Here, as we have explained, the ALJ's hypothetical question accurately portrayed the limitations supported by the evidence, and the VE's testimony provided substantial evidence to support the ALJ's step four finding. As such, this Court should affirm the Commissioner's decision.

14

**Conclusion**

Substantial evidence supports the ALJ's finding that Plaintiff was not disabled because she was capable of performing her past relevant work.  The Commissioner, therefore, requests that the Court affirm his decision.

Respectfully submitted,

PATRICK J. FITZGERALD
United States Attorney

By: s/ Kathryn A. Kelly
KATHRYN A. KELLY
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-1936
kathryn.kelly@usdoj.gov

Of Counsel:

DONNA L. CALVERT
Regional Chief Counsel
Social Security Administration

KAREN SAYON
Assistant Regional Counsel
200 West Adams Street, Suite 3000
Chicago, Illinois 60606
(312) 353-9246