UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KRISTINE E. HENRIKSEN, ) | |
| ) | |
| Plaintiff, ) | Case No. 07-C-6142 |
| ) | |
| v. ) | |
| ) | **Hon. Jeffrey Cole** |
| MICHAEL J. ASTRUE, ) | U.S. Magistrate Judge |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HER
MOTION FOR SUMMARY JUDGMENT OR REMAND**

**I.     Introduction**

Plaintiff filed a Memorandum in support of her Motion for Summary Judgment ("Pl.'s MSJ") on March 11, 2008. Defendant then filed his Memorandum in Support of the Commissioner's Decision ("Def.'s Resp.") on May 5, 2008. Plaintiff herein responds to the Commissioner's arguments.

**II.    The ALJ's RFC Determination is Not Supported by Substantial Evidence.**

Defendant argues that the ALJ's RFC determination is supported by substantial evidence, i.e. her "conservative treatment history, minimal abnormal examination findings documented by her doctor, and the opinions of state agency reviewing doctors and consultative examiners," and that the ALJ properly weighed and treated the evidence of record. (Def.'s Resp. at 7-10). However, Defendant's assertions are in direct contravention of the Commissioner's own rulings and regulations as to how to treat and weigh the evidence of record and do nothing more than attempt to submit *post hoc* rationalizations for the ALJ's erroneous determination that makes false generalizations and fails to fully and fairly consider all of the opinions and evidence of record. *Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003); s*ee also, SEC v. Chenery*

*Corp.*, 332 U.S. 194, 196 (1947) (The grounds on which an administrative order must be judged are those upon which the record discloses that its action was based.); *NLRB v. Kentucky River Community Care, Inc.*, 532 U.S. 706, 715 (2001) ("We do not, of course, substitute counsel's post hoc rationale for the reasoning supplied by the Board itself.") (internal citations omitted).

      Moreover, contrary to Defendant's contentions, although it can be considered by the ALJ as evidence, State agency opinion can never alone be substantial evidence on which the ALJ relies to support her determination, as herein, as it is only cumulative evidence if it is in addition to the CE's separate MSS/RFC, as opposed to being the sole RFC. (Def.'s Resp. at 8); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); *Allen v. Weinberger*, 552 F.2d 781, 786 (7th Cir. 1977) ("without personal examination of the claimant, deserve little weight in the overall evaluation of liability. The [medical] advisers' assessment of what other doctors find is hardly a basis for competent evaluation"); *Strickland v. Barnhart*, 107 Fed. Appx. 685, 688 (7th Cir. 2004). This was recently affirmed in *Oakes*, which stated that by accepting a non-examining physician's opinion over an examining physician's opinion, the ALJ impermissibly "effectively substituted his own judgment" in place of the examining physician's judgment. *Oakes v. Astrue,* 258 Fed. Appx. 38 (7th Cir. 2007) (*citing Gudgel*, 345 F.3d at 470 (7th Cir. 2003) and *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)). Indeed, herein, the ALJ played doctor in construing the treating evidence to be conservative and rejecting it. Overall, herein, the ALJ's reasons for rejecting the treating physician's opinion are not supported by the evidence of record, and the ALJ failed to comply with the requirements for the analysis of weight provided to different physician opinions. (Pl's MSJ at 12-17).

      Contrary to Defendant's assertions, the ALJ cannot simply state that all of the evidence generally agrees with her own lay opinion, but must trace a path from the evidence to her conclusions and give a reasoned opinion that is well-founded in the

evidence. SSR 96-8p (the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (finding that an ALJ must "build an accurate and logical bridge from the evidence to her conclusion"); *Grove v. Apfel*, 148 F.3d 809, 810 (7th Cir. 1998) (same); *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004) (holding that the ALJ "need not address every single piece of evidence in his decision, . . . but his analysis must build an accurate and logical bridge between the evidence and his findings.")

　　　　Ignoring the ALJ's failure to properly weigh the evidence of record and consider the specific findings of the treating doctors of record, Defendant submits that the ALJ adequately weighed the evidence by taking into account her purportedly conservative treatment, activities and minimal abnormal X-ray findings, and he submits that the ALJ's opinion is "substantially consistent" with an opinion of a consultative examiner. (Def.'s Resp. at 8). However, the consultative examination by Dr. Brown is not consistent with the ALJ's determination. Indeed, as pointed out in Plaintiff's MSJ at 15, although the ALJ states that the orthopedic CE found no support for Plaintiff's complaints of shoulder or foot pain, Dr. Brown diagnosed her with bilateral shoulder pain, despite the absence of restriction in motion; demonstrating he considered the pain to be real (even if an exact etiology was not determined) and he limited her to no more than occasional lifting of 10 pounds and never more that 10 pounds. (R. 18, 166-72). Moreover, the ALJ did not rely on Dr. Brown's statement; thus, Defendant's contention is nothing more than *post-hoc* rationale. Defendant notes that the VE considered Dr. Brown's MSS and stated that Plaintiff could still do work as a technical writer. (Def.'s Resp. at 8, n. 3; R. 231-32). However, as argued in Plaintiff's MSJ at 22-23, upon proper incorporation of all of Plaintiff's impairments, not simply those found by Dr. Brown, but also mental components including difficulty dealing with stress and the fact that Plaintiff's past work

was not properly analyzed and considered under SSR 82-61 and 82-62, this statement by the VE cannot be relied upon as substantial evidence.

Defendant appears to argue that the ALJ properly relied on her own analysis of the evidence and her own characterization that Plaintiff's treatment was conservative and the findings minimal. Defendant's argument is contrary to Circuit Law. When the ALJ rejects the treating evidence without providing a well-supported and logical reason and instead relies on her own hunches in combination, she is impermissibly playing amateur doctor. The amateur-doctor surmising of the ALJ coupled with reliance on the opinions of a State agency physician is legal error and is contrary to SSR 96-2p, SSR 96-5p and 20 C.F.R. § 404.1527. Moreover, an ALJ may not "play doctor" by substituting her opinion for that of a physician regarding the proper treatment for Plaintiff's conditions. *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2003) (an ALJ improperly "play[s] doctor" when she makes a medical conclusion without expert evidence); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("[A]s this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (stating that judges, including ALJs of the Social Security Administration, must be careful not to succumb to the temptation to play doctor, and noting that common sense can mislead; lay intuitions about medical phenomena are often wrong); *Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1995) (decision must be "based on the record rather than on a hunch[;]" "Everything else is rank conjecture."). The ALJ must, instead, call upon a medical expert to aid her if she has difficulty determining what limitations are caused by impairments of record.

Defendant then contends that the treating doctor's opinion was properly rejected by the ALJ because the opinion showed only conservative treatment, minimal abnormal findings and also that the treatment appeared successful with no evidence of worsening.

(Def.'s Resp. at 9). However, both Defendant and the ALJ are playing amateur doctor. Although there was only one X-ray, it did not show minimal findings, but rather degenerative joint disease in both knees, as the ALJ herself noted, which was exacerbated by Plaintiff's morbid obesity which intensified the resulting pain. (R. 22). Dr. Outly's opinion was supported by the x-ray (objective evidence) he reviewed. If the ALJ was of the opinion that she needed to see the x-ray (or x-ray report) reviewed by Dr. Outly before she could credit his opinion, she had an obligation to contact the doctor and obtain a copy of the x-ray or at least ask plaintiff's counsel to do so for her. Instead, the ALJ simply discounted the opinion of the treating physician, which amounts to legal error. SSR 96-5p. Moreover, Defendant's argument falls flat because neither Defendant nor the ALJ have provided a cogent rationale for what was missing since Plaintiff's symptoms were reasonably related to medically determinable impairments, which is all that is required under SSR 96-7p. (Def.'s Resp. at 9). Defendant claims that the ALJ properly rejected the Dr. Outly's opinion because his treatment notes showed only routine follow-up examinations and prescription refills; however, the prescriptions were for pain medications, including narcotics, which are not distributed lightly and there is nothing in the regulations that requires someone to have surgery to be disabled. *See Forrest v. Barnhart*, No. 04-cv-4666 (N.D. IL Aug. 29, 2005) (finding that a claimant should not be required to undergo surgery to be found disabled) (unreported) (attached as Exhibit A). Moreover, Dr. Outly routinely performed examinations during Plaintiff's appointments and noted osteoarthritis in her knees with crepitus, swelling, periods of edema and severe pain that did not improve causing her "a lot of difficulty walking" in addition to noting continued hypertension, anxiety, abdominal pain, depression and seasonal allergies. (R. 101-12, 150-53, 174-77, 192-93). Plaintiff was awarded a disabled person parking placard in 2002 due to the permanent and severe osteoarthritis in her knees as certified by Dr. Outly who specified that she is "severely limited" in her ability to walk with an

inability to walk 200 feet without stopping to rest. (R. 114). On March 21, 2007, Dr. Outly wrote a letter stating that Plaintiff's musculoskeletal problems have not improved and that she continues to have the same restrictions as noted in 2005 as he has not seen any improvement and her prognosis is poor. (R. 192). This contradicts both the ALJ's and Defendant's lay surmization that Plaintiff's treatment was successful. (Def.'s Resp. at 9). The record substantiates that Plaintiff has an impairment confirmed by her treating physician that reasonably caused significant pain - - pain that was exacerbated by her morbid obesity and which interfered with her ability to sustain the concentration required to perform her skilled past work.

      Defendant next claims that Plaintiff misstates the law in asserting that the ALJ should have recontacted Dr. Outly in this case. (Def.'s Resp. at 9-10). Defendant claims previously that Dr. Outly's treatment notes were deficient and not complete, specifically noting that the X-ray he used to diagnose Plaintiff's condition is not of record although another X-ray is, but then states that the treatment notes were comprehensive and that the ALJ need not have contacted Dr. Outly; however, Defendant cannot have it both ways. *Id*. The ALJ claimed that Dr. Outly's opinion was not based on objective evidence, but as noted above, failed to communicate that she needed to see the x-ray Dr. Outly had reviewed in order to credit his reports. Contrary to Defendant's contention that it was Plaintiff's counsel sole responsibility to supply the x-ray; social security hearings are supposed to be non-adversarial and the ALJ is charged with the responsibility of making sure the decision is made on a full and fair record (even where the claimant is represented). *Sims v. Apfel*, 120 S.Ct 2080, 2086 (2000) (the ALJ has a duty to investigate the facts and develop the arguments both for and against granting benefits). Here, if the ALJ was of the opinion that without seeing a copy of the x-ray reviewed by Dr. Outly, she would be unable to credit his reports. The ALJ should have, at the very least, notified counsel that she required that x-ray report; she should not have simply waited until

rendering her decision and at that juncture let it be known that she was not going to credit Dr. Outly's report without having first seen the x-ray that he had reviewed.  As set forth earlier, SSR 96-5p substantiates that the ALJ should have asked counsel to obtain it or else had her staff contact the doctor (a system for which is in place at the hearing office) for the basis of his opinion, particularly since his is the only treating opinion of record.  Instead, the ALJ committed legal error and simply reject Dr. Outly's opinion in favor of her own assumptions and on the evidence provided by the non-examining state-agency reviewer, which can never on its own provide substantial evidence upon which the ALJ's decision can rely.  *Oakes, supra.*  Indeed, if the ALJ thought there was insufficient evidence, it was incumbent upon her to make *every* reasonable effort to -contact Dr. Outly in her duty to fully develop the record.  20 C.F.R. § 404.1512(e).   Defendant also claims that Plaintiff has not shown why the x-ray is crucial to her case, but if the ALJ is going to dismiss Dr. Outly's opinion as being unsupported because there is purportedly no objective evidence, despite clear clinical medical findings, the ALJ must indicate what else is needed and give Plaintiff an opportunity to present the evidence.  (Def.'s Resp. at 10).

Defendant next fails to specifically respond to Plaintiff's arguments regarding the ALJ's failure to properly consider the effect of Plaintiff's obesity and the ALJ's failure to provide any logical rationale for rejecting Plaintiff's need for changes in positions, ultimate inability to sustain the sitting and standing necessary for even sedentary work, need to take unscheduled breaks to relieve her pain, inability to lift even less than 10 pounds rarely and limitations in repetitive fingering, handling and reaching.  (R. 156-57).  Plaintiff's symptoms and limitations are reasonably related to a chronic condition, substantiated by Dr. Outly who has been treating her for year (was in the best position to view the effect of her impairments over a long period of time) and it was unreasonable

and inconsistent with the evidence of record for the ALJ to simply reject Dr. Outly's opinion and assessment regarding her exert ional limitations.

Defendant next argues that the ALJ "offered numerous compelling reasons" why she did not credit Dr. Outly's limitations regarding concentration and attention due to pain, stating that these included: a lack of notation in the treatment notes regarding attention and concentration problems; Plaintiff's activities were inconsistent with difficulties in attention and concentration; Plaintiff was articulate at the hearing displaying no memory problems; and Dr. Frey noted her to have normal memory and fine abilities in thinking. (Def.'s Resp. at 10-11). The ALJ's rationale is wrong and Defendant merely restates the ALJ's findings without addressing any of Plaintiff's specific argument. (Pl.'s MSJ at 14-20). First of all, simply because Dr. Outly had not noted the problems with concentration in his treatment notes does not mean the ALJ is free to reject that limitation. Dr. Outly was asked to address a question that he had not previously addressed in his notes. The fact that treatment notes do not cover every aspect of the patient does not mean that a treating physician cannot, when asked, review the patient's history and properly answer the question. That is precisely what happened in the case *sub judice.* When specifically asked to comment on the impact of Plaintiff's pain on her ability to sustain concentration and opinion, Dr. Outly reflected upon her condition as set forth in her chart and reported diminished ability to sustain attention and concentration related to her underlying impairment. Indeed, that opinion is not inconsistent with the evidence of record, particularly severe pain (which was also reported) and thus, the proffered reason for rejecting Dr. Outly's assessment regarding the impact of pain on Plaintiff's ability to sustain attention and concentration must be rejected. Moreover, the inter-relation between the experience of pain (based on a medically identified underlying physical impairment exacerbated by obesity) and the impact on the individual's ability to sustain attention and concentration throughout the

workday shows that this was a complicated case which, if the ALJ did not want to follow the assessment of the treating physician, should have resulted in the ALJ recognizing the great need to call upon a Medical Expert (either by way of a supplemental hearing or even via written interrogatory)[1]. Indeed, the Seventh Circuit has repeatedly noted that pain can be severe to the point of being disabling even though it has no diagnosable cause; problems in concentration resulting from pain should be similarly treated. *Sims v. Barnhart*, 442 F.3d 536, 537-38 (7th Cir. 2006); *Carradine v. Barnhart*, 360 F.3d 751, 753-54 (7th Cir. 2004). As to the other reasons offered by the ALJ for her compete rejection of Plaintiff's decreased ability to sustain attention and concentration over the workday because of pain,: the ALJ's observations of the ability to sustain focus and respond during the 35 minutes or so when she was being questioned at the hearing (the entire hearing lasted 48 minutes, R. 207, 237); and the ability to do some activities at her own pace - - the ALJ fails to provide a reasonable bridge between those observations and her conclusion. Dr. Outly's assessment was not that Plaintiff was completely unable to concentrate for discrete periods of time nor that she was completely bedridden and unable to do any activities. Rather, Dr. Outly's opinion (and Plaintiff's contention) is that pain interferes with her ability to sustain the attention and concentration needed to perform full-time work. Both Defendant and the ALJ failed to heed the Seventh Circuit's frequent admonition that the ability to do intermittent activities does not equal the ability to function in a competitive work environment. *See Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (stating "The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically

---

[1] In cases with complex, complicated medical pictures, such as herein, Medical Experts are available at the request of the ALJs to advise them on medical issues. 20 C.F.R. § 404.1527 (the ALJ may ask for and consider opinions from medical experts). According to HALLEX I-2-5-30, the ALJ must review all of the evidence to determine if additional evidence is needed to inquire fully into the matters at issue. If this review indicates that ME opinion is needed, the ALJ must obtain the opinion by requesting an ME to either testify at a hearing or provide answers to written interrogatories.

between home and office or factory or other place of paid work.)  Contrary to the central theme of Defendant's response brief, the ALJ cannot reject Dr. Outly's assessment or find incredible Plaintiff's testimony simply because it seems in excess of the "objective" medical evidence or is not explicitly noted in the treatment notes. *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005).

Next, Defendant claims that Dr. Frey's report had a typographic error and that the ALJ did not fail to properly assess Plaintiff's mental impairments and include them into the overall RFC determination.  (Def.'s Resp. at 11-12).  Defendant admits that Dr. Frey's report indeed stated that even though Plaintiff's depression was in remission, her functioning is reduced 80% by her depression, but states that it must have been a typographic error because of the rest of his report.  (R. 123-26).  However, the ALJ should not be making guesses regarding the possible intent of Dr. Frey.  Indeed, where there is any question as to what the doctor meant - - e.g., was there a typographical error or was it the intended result, the ALJ must contact the doctor for clarification.  SSR 96-5p.  In lieu of clarifying Dr. Frey's intent, the ALJ could have obtained an MSS (medical source statement) from him rather than ignore his opinion outright and instead rely on a reviewing doctor's opinion of what Dr. Frey's report showed, which also ignored the 80% reduction.  Defendant ignores the fact that bolstering the report of Plaintiff's decreased functioning due to depression is report is Dr. Outly's recognition for the need to consistently prescribe medication for depression.  Defendant erroneously states that an MSS was unnecessary here because another doctor (a state agency non-examining reviewer) read Dr. Frey's report and offered his opinion, but this fails to resolve any of the issues with Dr. Frey's report. (R. 100-112, 150-54, 193).  "Reasonable inferences may be drawn, but presumptions, speculations and suppositions should not be substituted for evidence."  SSR 86-8.  Pursuant to SSR 86-8, rather than engage in speculation, the ALJ should have recontacted Dr. Frey or resolved the conflict between this finding and

the subsequent non-examining State agency report, which she did not do; and remand is necessary to properly determine the impact Plaintiff's depression has on her ability to function, particularly in light of Dr. Outly's opinion that suffers from anxiety and depression that interfere with her ability to sustain work and handle stress. *See* SSR 85-15.

Overall, Defendant's assertion that the ALJ fully and fairly took into consideration and weighed the evidence of record is unsupported and the ALJ's RFC determination is incomplete and unsubstantiated requiring remand, perhaps even requiring the ALJ to call upon an ME to advise her as to what the evidence (in combination) shows. *See* HALLEX I-2-5-34 (When an ALJ may need to obtain ME testimony); 20 C.F.R. 404.1527(f)(2)(iii)( Administrative law judges may also ask for and consider opinions from medical experts). The ALJ did not follow Social Security's own rules and regulations regarding the evaluation and determination of disability and played amateur doctor rather than rely on substantial medical opinions available to her, which requires remand for proper determination of Plaintiff's claim.

**III.    The ALJ's Credibility Determination Was Erroneous.**

Defendant claims that the ALJ's credibility finding was not patently wrong and should be affirmed because Plaintiff's credibility was undermined by her activities, conservative treatment, few abnormal findings and lack of evidence that her condition had deteriorated. (Def.'s Resp. at 12-14). Defendant merely echoes the ALJ's credibility statements; however, all of the reasons the ALJ listed for finding against Plaintiff's credibility were flawed and erroneous, failing to follow SSR 96-7pp and 20 C.F.R. § 404.1529.

Defendant dismisses Plaintiff's argument that the ALJ inappropriately dismissed Plaintiff's credibility as to her attention and concentration problems because she was able to answer questions at the hearing, stating that the ALJ's determination was not based on

11

this alone, but Plaintiff's "extensive" activities. (Def.'s Resp. at 12-13). To begin with, as noted earlier, Plaintiff's ability to respond to questioning for 35 or 40 minutes is not the same as being able to sustain the concentration and attention needed for skilled technical writing throughout the work-day. Moreover, although the ALJ can review a claimant's activities in assessing credibility, but in so doing she must be mindful of the frequent admonitions in this circuit that intermittent activities done at the claimant's chosen pace with breaks in between is not inconsistent with allegations of disability nor is it the equivalent of the ability to sustain the rigors of a full-time employment. *See* 20 C.F.R. § 404.1573(c); *Mendez*, 439 F.3d at 362; *Carradine,* 360 F.3d at 751 (finding error where the ALJ failed to consider the difference between an ability to participate in sporadic physical activities and the ability to work in a regular work week). Defendant claims that Plaintiff's one time statement that she was keeping busy to her doctor, making some crafts on her own time every now and then, driving her mother to errands and attending a weight loss program is somehow evidence that her pain is less than she claims and that she could maintain the attention and concentration necessary to sustain full-time work; however, Plaintiff only performed these activities when she could and when she was not overcome by pain and other symptoms. These activities are of the type that *Mendez* and *Carradine* referred to, and it was erroneous for the ALJ to characterize them as evidence negating Plaintiff's credibility. *See also Thomas v. Sullivan*, 876 F.2d 666,669 (8th Cir. 1989) ("Claimant need not prove she is bedridden or completely helpless to be found disabled."); *Smith v. Califano*, 637 F.2d 968, 972 (3rd Cir. 1981) ("Disability does not mean that a claimant must vegetate in a dark room from all forms of human and social activity.")

      Next, Defendant claims the ALJ properly dismissed Plaintiff's testimony as to the side-effects of her medication because Plaintiff never complained to Dr. Outly as to side-effects; however, Defendant then notes one instance in which she did complain. (Def's

12

Resp. at 13). What Defendant ignores is that since drowsiness and fatigue are commonly reported side-effects of Plaintiff's medication (as noted in Plaintiff's opening Brief) it is likely that Dr. Outly felt it necessary only to record less-common or more serious side-effects. (Def.'s Resp. at 13). Moreover, since the drowsiness and fatigue to which Plaintiff testified are reasonably related to her physician prescribed medication, the ALJ cannot simply ignore these side-effects under SSR 96-7p, but must take them into some consideration.

Defendant fails to specifically address Plaintiff's other arguments regarding the errors in the ALJ's decision and merely restates the ALJ's findings, which were addressed in Plaintiff's MSJ at pages 19-22. Overall, the ALJ's credibility determination fails to follow the Commissioner's own regulations and rulings and thus, cannot be upheld. .

## VI.    Substantial Evidence Does Not Support the ALJ's Step 4 Finding.

Defendant argues that the ALJ need only incorporate those limitations she finds credible into the RFC and hypotheticals and that the hypothetical questions herein adequately portrayed the limitations supported by the evidence; thus, the ALJ's Step Four determination is not erroneous. (Def.'s Resp. at 14). However, Defendant fails to address any of Plaintiff's specific arguments, including the fact that the ALJ's Step Four argument is erroneous as she failed to even specify whether she found Plaintiff capable of doing her past work as she performed it or as it was generally performed; also, the ALJ failed to even completely follow the proper analysis in considering Plaintiff's past work at Step Four, let alone creating hypotheticals that properly included all of her limitations. As explained in Plaintiff's MSJ at pages 21 to 24, the ALJ failed to properly include all of Plaintiff's limitations into the hypotheticals and erred when she found that Plaintiff could perform her past work as a technical writer. (R. 23). The ALJ did not make an

alternative Step Five finding; thus, since her Step Four finding is erroneous, the ALJ's decision must be reversed.

An ALJ must determine the physical demands of the particular type of work that a claimant has performed, and then compare those demands to her present capacities; such a determination must be made carefully with consideration of the interaction of the limiting effects of the claimant's impairment(s) and the physical and mental demands of her PRW to determine whether she can still do that work.. SSRs 82-61 and 82-62; *Strittmatter v Schweiker*, 729 F.2d 507, 509 (7th Cir, 1984); *see also Orlando v. Heckler,* 776 F.2d 209, 215 (7th Cir. 1985); *Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986). The ALJ did not make such a determination herein and, as shown in Plaintiff's Opening Brief, Plaintiff cannot perform her past technical writing work as she performed it because it was not sedentary work and required her to travel weekly, and conduct meetings, interviews and supervise writers, which required her to walk a lot. (R. 212-13). Moreover, as generally performed, the DOT does show that the technical writer position is sedentary and skilled, but Plaintiff cannot perform this work because it is skilled and, although the ALJ did not make a skill level finding in her RFC determination, the evidence of record substantiates that Plaintiff's pain and depression interfere with the ability to sustain the mental demands of skilled work, particularly in light of Dr. Frey's comment that she has an 80% reduction in her mental ability to function and her difficulty working at a consistent pace and under stress and fatigue. These impairments are supported by the objective and medical evidence, and they are restricting to the point that Plaintiff cannot perform skilled work; at the unskilled level, Plaintiff is disabled under the Commissioner's medical-Vocational Guidelines (i.e., the Grids). 20 C.F.R. Part 404, Subpart P, App. 2, § 201.14. Moreover, when the VE considered the effect of these mental impairments, he testified that Plaintiff's past work would be eliminated. (R. 232-36). The ALJ discredited the mental limitations as well as Plaintiff's difficulty

sustaining concentration, which also would have resulted in a finding of disability, giving the appearance of a result-oriented decision that is impermissible. *Jones v. Heckler*, 583 F.Supp. 1250, 1253 (N.D. Ill. 1984) ("what appears to be happening is that benefits are being denied by Secretary not on the merits in individual cases, but on a more restrictive policy that is result-oriented rather than justice-oriented.")  As noted in her opening brief, an outright reversal is merited here because a remand would serve no purpose as the evidence shows a clear finding of disability under the Grids when the ALJ's errors are corrected.  (Pl.'s MSJ at 23-24).  Even if an outright reversal is not granted, the ALJ's decision is flawed and not supported by substantial evidence in the record requiring reversal and remand in order to give Plaintiff a full and fair hearing and decision.

## VII.    Conclusion

WHEREFORE, Plaintiff moves this Honorable Court grant her Motion for Summary Judgment and reverse Defendant's denial of Plaintiff's application for disability benefits for the foregoing reasons, or, alternatively, remand Plaintiff's case pursuant to sentence four of 42 U.S.C. § for further proceedings consistent with circuit law and the Commissioner's regulations and rulings.

Dated: May 15, 2008                                        Respectfully submitted,

                                                           s/ Marcie E. Goldbloom
                                                           Marcie E. Goldbloom
DALEY, DeBOFSKY & BRYANT                                   Attorney for Plaintiff
55 West Monroe Street, Suite 2440                          Kristine E. Henriksen
Chicago, Illinois 60603                                    mgoldbloom@ddbchicago.com
(312) 372-5200
Fax (312) 372-2778

CERTIFICATE OF SERVICE

TO:  Kathryn Kelly                                    Karen Sayon
     Assistant United States Attorney                 Assistant Regional Counsel
     219 S. Dearborn St., 5th Floor                   200 W. Adams St., 30th Floor
     Chicago, IL 60604                                Chicago, IL 60606

   The undersigned attorney hereby certifies that on May 15, 2008, she electronically filed the foregoing PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR REMAND with the Clerk of the Court using the CMF/ECF filing system, which sent notice of such filing to Kathryn Kelly, the above named attorney, and that I hereby certify that I have mailed via the United States Postal Service the document to the following non-CMF/ECF participants: Karen Sayon, Esq.

                                                     s/ Marcie E. Goldbloom
                                                     Marcie E. Goldbloom
DALEY, DeBOFSKY & BRYANT                             Attorney for Plaintiff
55 West Monroe Street, Suite 2440                    Kristine E. Henriksen
Chicago, Illinois 60603                              mgoldbloom@ddbchicago.com
(312) 372-5200
Fax (312) 372-2778