# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| **KRISTINE HENRIKSEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 07 C 6142** |
| | ) | |
| v. | ) | **Magistrate Judge Cole** |
| | ) | |
| **CAROLYN W. COLVIN**[1]**, Commissioner** | ) | |
| **of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff's counsel, Marcie Goldbloom, seeks an attorney's fee award in the amount of $43,330.25 pursuant to 42 U.S.C. §406(b)(1). Ms. Goldbloom's work in the federal district court garnered the plaintiff a remand of the denial of her application for Social Security disability benefits. After her claim was again denied following the proceedings on remand, the plaintiff took her claim to the Appeals Council. The Appeals Council ordered yet another hearing and the plaintiff finally prevailed when the ALJ issued a favorable decision awarding her benefits retroactive to July 2004. The total past due benefits were significant: $194,521. Under the statute, this court may award "a reasonable fee not in excess of 25 percent of the ... past-due benefits" awarded to the claimant. 42 U.S.C. § 406(b)(1)(A). The $43,330.25 Ms. Goldbloom seeks represents just that, adjusted to reflect a $5,300 payment she has already received for her work at the administrative level under 42 U.S.C. §406(a).

The Commissioner does not begrudge Ms. Goldbloom a fee award, but argues that $43,000

---

[1] Pursuant to Federal Rules of Civil Procedure 25(d), we have substituted Carolyn W. Colvin for Michael J. Astrue as the appellee.

is too much. She contends that this amount to an hourly rate of $929.83. She calls it a windfall and points out that it is five times the $125 rate set out in the Equal Access to Justice Act, although she gives no hint at what she thinks a proper award might be. And finally – and stunningly – the Commissioner points to the large back benefit amount and complains that "counsel is gaining benefit simply based on the time it takes the agency to address a disability claim like plaintiff's." *(Defendant's Response*, at 3).

This last argument will be taken first, as it can be readily disposed of. Ms. Henriksen applied for benefits in April 2005. The Commissioner's initial two rounds of denials at the administrative level took nearly a year. Over a year passed between the time Ms. Henriksen filed for an administrative hearing and one was convened. Her claim was finally denied when the Appeals Council denied her request for review in August 2007. So that's two years and four months. Litigation of her appeal of the denial in federal district court took a little more than ten months. Once the case was back in the hands of the Commissioner, Ms. Henriksen had to wait out two more ALJ's decision and an Appeals Council decision before the Commissioner was through. That took another four years and one month.

In all, it took the Commissioner six years and five months to finish up with Ms. Henriksen's claim. A party cannot legitimately complain about the consequences of delay – such as accrual of damages or back benefits – when she is the author of the delay. In varying contexts, claims of burden and prejudice are inevitably rejected when the complaining party caused the situation. *Cf. R.H. Stearns Co. v. United States,* 291 U.S. 54, 61-62 (1934) (Cardozo, J.)(" 'He who prevents a thing from being done may not avail himself of the non-performance which he has himself occasioned, for the law says to him in effect "this is your own act, and therefore you are not

damnified....' "); *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 688 (1946) (employer can't complain about inexactitude of damage award where he failed to keep records in accordance with statutory requirements); *United States v. Goodwin*, 449 F.3d 766, 772 (7th Cir.2006)(Posner, J.)("He was therefore the co-author of the prolongation that is the fulcrum of his Fourth Amendment claim ... It is in that sense that he is the author of the delay of which he complains."). *United States v. Cohen,* 145 F.2d 82 (2nd Cir.1944)(L. Hand, J.); *cert. denied,* 323 U.S. 799 (1945) ("It is particularly unreasonable for the accused ... to complain of that confusion of which they were the authors.").

It took an exceedingly long time for the Commissioner to arrive at her ultimate conclusion. She made several wrong decisions along the way.[2] Who ought to bear the consequences of all that – the Commissioner or Ms. Henriksen's counsel, who successfully navigated these stagnant waters on behalf of her client? The answer seems obvious.

The cases the Commissioner relies on do not support her theory on delay. In *McGuire v. Sullivan*, 873 F.2d 974 (7th Cir. 1989), the Seventh Circuit merely noted that Congress had enacted a 25% cap on fees to address large awards due to accumulation of back benefits and attorneys charging contingency rates ranging from one-third to one-half of those benefits. 873 F.2d at 980 n.4. Of course, that's all we are quibbling over here: 25%.

The Sixth Circuit's 1-page decision in *Dearing v. Secretary of Health and Human Services*, 815 F.2d 1082 (6th Cir. 1987) does not help the Commissioner. In *Dearing*, nearly four years passed

---

[2] Even if the Commissioner, rather than finally reaching the correct result, instead merely capitulated, it changes nothing. In such a case, it was still for the Commissioner to decide whether to allow past benefits accrue or act swiftly and cut her losses. Defendants settle cases in which they are in the right on a regular basis owing to the costs of maintaining their position *vis a vis* making a business decision to save money by putting an end to things.

3

between the plaintiff's filing a motion for summary judgment and the district court's decision. *Id*. at 1083. Reaffirming its 17-year-old decision in *Webb v. Richardson,* 472 F.2d 529 (6th Cir.1972) – which would be overruled on at least one aspect of the decision seven years later – *Horenstein v. Secretary of Health and Human Services,* 35 F.3d 261 (6th Cir.1994)(En Banc) – the court held that attorney's fees were limited to 25 percent of the past due benefits that would have accrued "if judgment had been rendered within three months of the date the case was ready for submission." *Id*. at 1083. That is, after the Secretary's reply brief was filed. *Webb,* 472 F.2d 538.

The Sixth Circuit laid the delay resulting in the accrual of back benefits – and consequently, fees – at the district court's doorstep. Indeed, the court was "appalled that the District Court could accord such treatment to any class of litigants, and [was] outraged that the court did this with Social Security cases. As the Secretary observes in his brief, most claimants are poor and not well educated, and disability claimants have the added handicap of severe physical impairments." Such cases, the court felt should get priority along with criminal cases on a district court's docket. *Webb*, 472 F.2d at 538.

Ms. Henriksen filed her motion for summary judgment in March 2008, and a decision was rendered less than six months later – less than four months after briefing was complete. This more than comported with the three month timetable the Sixth Circuit thought was appropriate in 1987, long before the current glut of Social Security cases in the federal courts. The delay in this case is attributable therefore solely to the Commissioner.

Notably, Congress's other concern in addition to lawyers charging exorbitant percentages was that the fee would increase as litigation dragged on. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 804 (2002). That was not the case here. The delay occurred in the Commissioner's office, not in

4

the federal court. And the delay was clearly no fault of counsel's. *Cf. Gisbrecht*, 535 U.S. at 808 ("If the attorney is responsible for delay, for example, a reduction is in order so that the attorney will not profit from the accumulation of benefits during the pendency of the case in court.").

We are not unmindful of the ever increasing number of disability benefits applications the Commissioner must deal with. The same increase has its adverse effects in federal court as well, especially among the dockets of magistrate judges, who handle a very large percentage of these cases by consent. 28 U.S.C. §636(c). That results in the funneling of cases from the dockets of twenty-eight district court judges to just fourteen magistrate judges, who do not have comparable staffing to the district judges. As of May 30, 2013, Social Security disability appeals accounted for 76% of all cases on my docket in which motions were pending. If the Commissioner's point is that long delays on her part are inevitable, so, too, are they in federal court. But it does not follow that successful claimant's attorneys should bear the brunt of the consequences in a case like this where the delay was inordinate and linked to the Commissioner, not to the court.

Ms. Goldbloom had a contingent fee arrangement with Ms. Henriksen: Ms. Henriksen would pay her 25% of any recovery of back benefits. In *Gisbrecht v. Barnhart*, 535 U.S. 789 (2002), which the Commissioner cites, the Supreme Court noted that §406(b) specifically condones such agreements – as long as they don't exceed 25% – and employs them as a benchmark for an award. 535 U.S. at 802, 805. Such agreements are *de rigueur* in Social Security disability cases; without them, claimants would most likely not have access to representation. 535 U.S. at 803. As *Gisbrecht* noted: "[g]iven the prevalence of contingent-fee agreements between attorneys and Social Security claimants, it is unlikely that Congress, simply by prescribing 'reasonable fees,' meant to outlaw,

5

rather than to contain, such agreements." 535 U.S. at 805.

By breaking down the 25% fee in this case to an hourly rate, the Commissioner uses the lodestar method as a benchmark for an award under §406(b). But the lodestar method was rejected as a method for determining fees during the process leading up to the enactment of the statute. As the *Gisbrecht* Court recounted:

> Before enacting this express authorization, Congress instructed the Social Security Administration to prepare a report on attorney's fees under Title II of the Social Security Act. Pub.L. 100–203, § 9021(b), 101 Stat. 1330–295. The report, presented to Congress in 1988, reviewed several methods of determining attorney's fees, including the lodestar method. See SSA Report 10–11. This review led the agency to inform Congress that, although the contingency method was hardly flawless, the agency could "identify no more effective means of ensuring claimant access to attorney representation." *Id.,* at 25.

535 U.S. at 805-06. "Within the 25% boundary," however, "the attorney for the successful claimant must show that the fee sought is reasonable for the services rendered." 535 U.S. at 807.

Ms. Henriksen received excellent results in this case. Not only did she obtain nearly $200,000 in back benefits, but she will continue to receive a little more than $2000 a month until retirement age. Her total recovery will amount to about $375,000, not to mention the added value of Medicare. Already recounted is the history of the case; the achieving the result took meaningful effort. In view of all that, $43,000 seems a reasonable fee. Of course, as the Commissioner points out, attorneys may not receive fees based on a claimant's continuing entitlement to benefits. *Gisbrecht*, 535 U.S. at 795. But the figure is used only to demonstrate the quality of result Ms. Henriksen gained. *See Gisbrecht*, 535 U.S. at 808 ("Courts that approach fee determinations by looking first to the contingent-fee agreement, then testing it for reasonableness, have appropriately reduced the attorney's recovery based on the character of the representation and the results the

6

representative achieved."). Again, the Commissioner makes no suggestion whatsoever at what she feels would be a reasonable fee for the success Ms. Goldbloom achieved in this case.

It should be pointed out that Ms. Goldbloom also spent 36.5 hours representing Ms. Henriksen before the agency. It is true that such time is not compensable under §406(B), but it can provide something of a guide here. Ms. Goldbloom's non-contingent hourly rate is $500, and her law clerk's is $107. Again, using those rates only as a guide, *see Gisbrecht*, 535 U.S. at 808, the total noncontingent fee for this case would come to over $25,000. Considering the uncertainty that is inherent in a contingent fee arrangement, a $43,000 fee award does not seem unreasonable.

## CONCLUSION

The plaintiff's petition for fees pursuant to §406(b) [Dkt. # 40] is GRANTED, and the government shall pay $43,330.25 to Ms. Goldbloom. Ms. Goldbloom shall refund $6,260.75 to Ms. Henriksen. [Dkt. #44 at 1,5].

**ENTERED:** _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 2/20/14